**Y & Y POPCORN SUPPLY COMPANY**

v.

**ABC VENDING CORPORATION, Berlo
Vending Company and Jacob Beresin.**

No. 28546.

United States District Court
E. D. Pennsylvania.

Jan. 26, 1967.

———◆———

Blank, Rudenko, Klaus & Rome by Morris L. Weisberg, Philadelphia, Pa., for plaintiff.

Schnader, Harrison, Segal & Lewis by Edward W. Mullinix, Philadelphia, Pa., for defendants.

### PRETRIAL MEMORANDUM AND ORDER.

JOSEPH S. LORD, III, District Judge.

Plaintiff brought this treble damage antitrust action under the Clayton Act, charging defendants with violations of Sections 1 and 2 of the Sherman Act[1] and Section 7 of the Clayton Act.[2] In order to expedite their preparation for trial, the parties have asked us to rule *in limine* on the applicability of Section 5(a) of the Clayton Act[3] to the present suit. Specifically, the question presented is whether the plaintiff can make use of a Federal Trade Commission (FTC) consent order entered against the corporate defendants, and, if so, to what extent.

### I.

On November 4, 1959, the FTC issued its complaint against the defendants. Count I charged violations of Section 7 of the Clayton Act, arising from the acquisition by defendants in 1957 of two companies: "Sweets", a firm operating in the "Philadelphia Film Exchange Area",[4] and "Confection", a company operating largely in the "New York Film Exchange Area."[5] Count II charged the defendants with "unfair methods of competition" proscribed by Section 5 of the Federal Trade Commission Act[6] (FTC Act) and occurring in both the New York and Philadelphia Film Exchange Areas. This count repeated and incorporated by reference the charge of unlawful acquisitions as one basis of a Section 5, as opposed to a Clayton Act violation, and added alleged abuses which consisted of making preclusive loans and affording other inducements to customers, requiring preclusively long contract commitments from customers, and exacting favored treatment from suppliers.

After an extensive hearing, the FTC hearing examiner handed down an initial decision on April 15, 1964 in which he

---

1. 15 U.S.C. §§ 1, 2.

2. "No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly. * * *" 15 U.S.C. § 18.

3. "(a) A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title. * * *" 15 U.S.C. § 16(a).

4. Defined in FTC order, ¶ III.

5. Id.

6. 15 U.S.C. § 45.

ordered divestiture of both Sweets and Confection. The examiner concluded that: "Both acquisitions, separately and jointly are violative of the provisions of Section 7 of the Clayton Act." Defendants argue that the examiner clearly "dismissed" Count II of the complaint, dealing with FTC Act violations. More precisely, it appears that he felt these alleged transgressions were ancillary to the root evil of agglomerated market power and need not be the subject of separate attack as long as the primary remedy of divestiture was effected.

The examiner's decision was the subject of appeal by both sides. The prosecutorial arm of the FTC wanted additional sanctions against the practices enumerated in Count II of the complaint; the defendants demanded exoneration. However, on September 29, 1964, an agreement and stipulated order was signed in which the defendants admitted "all of the jurisdictional facts alleged in the complaint * * *." With respect to all other matters, the agreement recited that "[t]he Commission has not made and will not make any adjudication or determination of any issue of law or fact presented by the complaint in this proceeding."

The Commission's decision and order was issued on October 22, 1964. The Commission "determined that it should waive * * * the timely filing of notice of intent to enter into a consent agreement"[7] and made findings of jurisdictional fact. It then ordered the divestiture of "motion picture theater concessions and contract rights for the operation of motion picture theater concessions * * * having aggregate concessionary sales of not less than $4,000,000 of which not less than $3,500,000 shall be in the New York and Philadelphia film exchange areas * * *." Additional terms of the order dealt with ancillary divestiture assurances as well as the other abuses enumerated in Count II of the complaint. In accordance with

the consent agreement, the order contained no other findings of fact or conclusions of law.

It is this order which plaintiff wishes to use in the present suit.

## II.

Plaintiff's complaint, which was filed on September 12, 1960, is largely a catalogue of the anti-competitive abuses charged in the FTC proceeding. There is appended, of course, the critical allegation that defendants' conduct had an adverse economic impact on plaintiff.

The operations of the respective parties differ in that plaintiff is a wholesale merchant of candy and pop-corn selling to theater owners in the Philadelphia area, whereas defendants are concessionaires, selling directly to the public from vending machines and booths within client theaters located in both the New York and Philadelphia areas.

## III.

■ Section 5(a) of the Clayton Act allows the use in private antitrust suits of decrees resulting from government actions as prima facie evidence of matters determined in the antecedent government suit which "would be an estoppel" between the government and the defendant. The proviso, exempting consent decrees "entered before any testimony has been taken" does not apply here because the FTC order was entered only after the hearing examiner had taken thousands of pages of testimony. And it is undisputed that the FTC order was "a final judgment or decree."

■■ There is likewise no question, at least in this Circuit, that as respects Count I, the FTC order is the product of a "civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws." New Jersey Wood Finishing Co. v. Minnesota Min. & Mfg. Co., 332 F.2d 346 (C.A.3, 1964), aff'd, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965). On the other hand,

---

7. The normal time for such a filing is ten days after the FTC has given notice of its intent to issue a complaint. See FTC Rules of Practice 16 C.F.R. §§ 2.1, 2.2.

the charges contained in Count II stand on a different footing. Section 5 of the FTC Act, which was the asserted basis for liability in Count II, is not one of the "antitrust laws." Id. at page 352. Therefore, no use could be made of a decree entered pursuant to that count.

The real problems presented are: (1) whether the decree is "to the effect that a defendant has violated [the antitrust] laws"; and (2) if so, what are the matters, if any, "respecting which said judgment or decree would be an estoppel as between the parties thereto" which the statute makes prima facie evidence of the same matters in the present treble damage suit.

Defendants vigorously contend that since the FTC made no findings of fact the decree is evidence of nothing,[8] least of all that it constitutes an adjudication of liability. The findings and initial decision of the hearing examiner do not automatically become those of the Commission unless it adopts them in its own findings,[9] and there were no such findings here. Insofar as the FTC is concerned, argue defendants, the consent order adjudicates nothing at all; by the FTC's own rules, it is not an admission of law.[10] Therefore, they conclude that the FTC order is not "to the effect" that defendants violated Section 7 of the Clayton Act, and that even if it were, there would be no way to discern the scope of any resulting estoppel.

Plaintiff counters by emphasizing that Section 5(a) is designed not only to aid private suitors in subsequent treble damage actions, Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); New Jersey Wood Finishing Co. v. Minnesota Min. & Mfg. Co., supra, but also to induce "prompt capitulation" by the defendants in the antecedent government proceeding. See, e. g., Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 323 F.2d 412 (C.A.7, 1963), cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964); City of Burbank v. General Electric Company, 329 F.2d 825 (C.A.9, 1964); General Electric Company v. City of San Antonio, 334 F.2d 480 (C.A. 5, 1964); De Luxe Theatre Corp. v. Balaban & Katz Corp., 95 F.Supp. 983 (E.D.Ill.1951).

■ This latter purpose emerges from the proviso to Section 5(a) which exempts from the operation of the main provisions those consent decrees entered before the taking of testimony. Confronted with the impending peril of "double jeopardy"—a government victory followed by the pleadings of alerted private suitors—the defendant is more likely to enter into a consent decree before any testimony has been taken. The effect of the statutory scheme in this case urges plaintiff, is that since the defendants here did not agree to the entry of a consent decree until after the hearing examiner had taken testimony and announced his decision, the preclusive effects of Section 5(a) must obtain, notwithstanding the fact that the FTC promulgated no explicit findings or conclusions. Plaintiff points out that Congress must have intended some consent decrees to be encompassed by the main provisions of Section 5(a) for it specifically excluded only those consent decrees entered before any testimony has been taken. There is nothing in the language or purpose of the statute which compels specific findings of fact, and plaintiff argues that we ought not import such a requirement.

■ We agree that the mere absence of expressed findings by the FTC does not necessarily preclude the applicability of Section 5(a) in a case where the de-

---

8. It does, however, seem unmistakably clear that the FTC order found and determined the Commission's jurisdiction and the facts upon which jurisdiction is grounded.

9. FTC Rules of Practice, 16 C.F.R. § 3.24.

10. FTC Rules of Practice, 16 C.F.R. § 2.3. Actually the Rules say only that "the [consent order] agreement may contain a statement that the signing thereof * * * does not constitute an admission by any party that the law has been violated * * *."

fendant has failed to capitulate before the taking of testimony. However, in this case it is not at all clear that the decree was "to the effect" that the defendants violated one, of the antitrust laws, i. e., Section 7 of the Clayton Act, rather than Section 5 of the FTC Act, which is not such a law.

To be sure, the hearing examiner found a violation of Section 7. But his decision was never adopted by the Commission. In fact, the order which the FTC issued departed substantially from the examiner's suggested decree in that it encompassed several of the additional abuses enumerated in Count II of the complaint, which dealt with FTC Act violations. It will be recalled that Count II began by incorporating the same factual charge of unlawful acquisitions as that contained in Count I. Therefore, it is conceivable that the FTC might have ultimately determined that the defendants' conduct throughout constituted only "unfair methods of competition" not rising to the level of an "antitrust law" violation.

Section 5(a) is undoubtedly a powerful deterrent to antitrust violators and an enviable weapon in the armory of the treble damage suitor. It is also an undeniable aid to the government in correcting antitrust abuses without the necessity of protracted litigation. But it is precisely because the effect of the invocation of Section 5(a) is so potently prejudicial and its "emotive impact" (especially in a jury case) so great, Monticello Tobacco Co. v. American Tobacco Co., 197 F.2d 629, 631 (C.A.2, 1952),

cert. denied, 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 678 (1952), that we must restrict the application of the statutory mandate to its logically compelling consequences. Here, we are drawn to no ineluctable inference that the Commission's order was "to the effect" that a Section 7 violation had occurred. Rather, we are confronted with an ambivalence which neither intensive interpretation nor reasoned reflection can resolve.

Furthermore, even if this decree were to the effect that defendants violated the antitrust laws, it would, at best, only show prohibited conduct in a market composed of the combined New York and Philadelphia Film Exchange Areas.[11]

The relevant market for the purposes of the present suit is the Philadelphia area. Of course, it cannot be said that illegal behavior in a defined market area necessarily assumes anticompetitive conduct in any included portion of that area. Since we cannot say that the FTC order was "to the effect" that defendants violated Section 7, we need not reach the question of whether the decree would have any probative value at all as to the merits of this case.

Our decision also renders unnecessary any attempt to delineate those matters of which the FTC order "would be an estoppel" and hence prima facie evidence in the present action.

The Federal Trade Commission consent order will not be admissible in evidence nor may any reference be made to its existence or terms at trial.

It is so ordered.

11. The FTC order required divestiture of a stated volume of concessionary rights "in the New York and Philadelphia film exchange area * * *." From this language, it would appear that for purposes of relief the FTC was structuring a market composed of both the New York and Philadelphia areas. Since de-

fendants might conceivably have divested themselves of a large volume of business in one component area while retaining largely intact their interests in the other area, it is not possible to say that the Commission was convinced that grave abuses constituting antitrust violations existed in each area independently.