Eleanor ELY, Administratrix of the Estate of Elmer L. Ely, Deceased, Appellant,

v.

READING COMPANY.

No. 18150.

United States Court of Appeals, Third Circuit.

Argued Jan. 23, 1970.

Decided April 9, 1970.

Matthew J. Ryan, III, O'Brien, Anderson, McCrudden & Parris, Philadelphia, Pa. (Cornelius C. O'Brien, Jr., Philadelphia, Pa., Davis, Katz, Buzgon & Davis, Lebanon, Pa., on the brief), for appellant.

William J. Taylor, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellee.

Before FORMAN, SEITZ and ADAMS, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

On December 9, 1963, the late Elmer Ely, accompanying his fellow employee, Benjamin Johnson a signal maintainer, proceeded by truck to Landis Siding,

Pennsylvania, where they had been sent by their employer, Reading Company, to check a report that an automatic block signal was not operating properly. Landis Siding runs off Reading Company's three track east-west main line between Palmyra and Hershey, Pennsylvania. After parking the truck on the south side of the main line the two men, both long-time employees of the Railroad, first checked the signal blocks east of the siding and found all in working order.

They then began their inspection at Landis shortly after which a sudden snow storm occurred with high wind which was the worst in many years. Hearing and visibility were drastically reduced. The two men retreated to their truck. Before the storm abated, however, Mr. Ely, the decedent, anxious to complete his assignment in order to catch a bus, left the truck and walked west to check the derail device on the siding track, located north of the main line. As he proceeded west, Mr. Johnson walking north felt vibrations from an on-coming train and he jumped in order to avoid being hit by it. He then turned west searching for Mr. Ely and found the dismembered parts of his body.

The train's engineer was unaware that there were workmen in the area. The train was travelling on the number one track at a rate of 50 miles per hour with two engines, 31 freight cars and a caboose.

No one actually witnessed the incident that took Mr. Ely's life but his foot prints were identified disclosing that he was walking between the rails of the number one track with his back to on-coming traffic. It was unnecessary for the workers to be on the tracks in order to perform their tasks. The signals were operating properly and if they had not been they would have indicated red which would have stopped any on-coming trains.

The above facts were brought out at a jury trial in the United States District Court for the Eastern District of Pennsylvania in a suit instituted by Eleanor Ely as Administratrix of the estate of her husband, Elmer Ely, against the Reading Company under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., to recover damages for his death. The jury rendered a verdict against her and judgment was entered thereon in favor of Reading Company on March 26, 1969. A motion for a new trial was denied on July 7, 1969, and this appeal followed.

■ Mrs. Ely, the appellant, first contends that the District Judge erred in accepting Point for Charge No. 18 of Reading Company, the appellee. She argues that it improperly limited the issue of liability to whether the engineer ran his train in accordance with the appellee's rules and in the usual fashion, instead of posing the question of whether both the engineer and Mr. Johnson conducted themselves reasonably under the circumstances. The disputed instruction reads:

"It must be remembered that the engineer, Mr. Hoffman, in this case was under orders to run his train according to schedule and he was proceeding under these orders as well as in accordance with the block signals along the right of way. Consequently, if you find there was nothing unusual in the operation of the train by Mr. Hoffman and Mr. Kinsey, [the fireman] that there was no violation of any statutory requirement, or that there was no failure of compliance with any orders or recognized custom or rule adopted for the safety and protection of employees, you may find for the defendant Reading Company."

■ In examining an alleged erroneous instruction to the jury, it is necessary to view the charge as a whole.[1] It must be determined whether the charge "taken as a whole, fairly and adequately submits the issues in the

---

1. Ridgway National Bank v. North American Van Lines, Inc., 326 F.2d 934, 936 (3 Cir. 1964).

case to the jury." [2] When this standard is applied here, it is obvious that the charge as a whole adequately put in issue both the engineer's and Mr. Johnson's actions. In at least three instances, the judge referred to both men.[3] As one example, the judge instructed that:

"In this case, of course, the railroad can't act as an individual. This is fundamental in this case. Were the employees of the railroad negligent? The engineer or engineman, was he negligent? Was Mr. Johnson negligent, having in mind that Mr. Ryan himself called Mr. Johnson and told you precisely what happened on that day? Were they negligent or did they act as a prudent person would under these circumstances or did they not? Did they fail to do something they should have done at that time and under those circumstances?" [4]

In light of the repeated reference to both men, it cannot be said that the one instruction which only mentioned the engineer improperly limited the question of liability. Nor can it be said, as appellant urges, that this instruction misstated her case or eliminated any pertinent evidence from the jury's consideration.

The appellant also contends on this appeal that this same instruction, defendant's Point for Charge No. 18, substantiated by implication the testimony of two of appellee's witnesses that the decedent walked between the rails and was contributorily negligent. It is difficult to understand how the instruction could have had such effect since it made no reference to the course taken by the decedent. This individual instruction simply directed the jury to consider whether the engineer was negligent. No basis is found therein for the inference

suggested by appellant and the inclusion of appellee's Point No. 18 in the charge constitutes no ground for reversal.

The other instructions of which appellant complains concerned causation. It is appellant's contention that the use of the phrase "proximate cause" erroneously led the jury to believe that the employee's negligence had to be the sole cause of the injury. The instructions in question read:

"If you should find that they (Johnson and Engineman Hoffman) were negligent in whole or in part causing this unfortunate death, then you must find that that was the cause of what ultimately happened. We use the term 'proximate cause.' Was there a causal relationship between this negligent act, if you decide that it was negligent? If you should find that, then is there a causal connection between that act and the ultimate result, and were their actions such as they should have foreseen that this would happen?"

\*   \*   \*   \*   \*   \*

"In other words, you would arrive at your damages first and then if you find that he was negligent, as I have described negligence to you, then you would reduce it, but of course first of all you would have to determine that the railroad itself was negligent and that that negligence was the proximate cause of the accident."

In arguing that the District Judge committed reversible error, the appellant relies primarily on the decisions in Rogers v. Missouri Pacific Railroad [5] and Hoyt v. Central Railroad.[6]

In *Rogers*, the Supreme Court outlined the test to be applied in deciding when a jury question is present in a

---

2. Nolan v. Greene, 383 F.2d 814, 816 (6 Cir. 1967). *See also* Waxler v. Waxler Towing Co., 342 F.2d 746 (6 Cir. 1965) ; Miller v. Brazel, 300 F.2d 283 (10 Cir. 1962).

3. Appendix, p. 75a.

4. *Id.*

5. 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

6. 243 F.2d 840 (3 Cir. 1957).

Federal Employers' Liability Act case. The Court stated:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest in producing the injury or death for which damages are sought." [7]

The *Rogers* case did not decide how a judge should instruct a jury in such cases. It did, however, recognize that the common law notions of proximate cause are not applicable in Federal Employers' Liability Act cases, and that it is not a requisite that the employer's negligence be the entire cause of the accident. Instead, the standard is whether the employer was negligent in whole or in part.

In *Hoyt*, this court was concerned with instructions on causation in this type of case. It was held that the trial judge's instructions based on proximate cause imposed a burden of proof on the plaintiff greater than that required by the Act. Because there was no instruction on the concept of plurality of causes and because the trial judge referred to "the proximate cause" at least five times, it was held that:

"[t]he instructions as a whole gave the jury the impression that any negligence on the part of the defendant had to be the sole proximate cause of the plaintiff's injury in order to hold the defendant liable." [8]

It was noted that in a Federal Employers' Liability Act case, the instructions

must necessarily define liability to include a greater area than that at common law. The jury must be instructed to consider that if the negligence of the defendant was one of the proximate causes of the accident, then liability exists. If the jury is led to

believe that the defendant's negligence must be the sole proximate cause of the accident, there is error." [9]

In the instant case, the District Judge, at least three times, instructed the jury that the plaintiff was entitled to recover if the decedent's death resulted *in whole or in part* from the employer's negligence.[10] For example, he instructed that:

"In order for plaintiff to prove that this railroad was responsible * * * they must convince you under these rules that the railroad was negligent *in whole or in part* and that negligence caused or proximately caused this accident." [11] (Emphasis supplied.)

Thus, the *Rogers* standard was satisfied.

Unlike the *Hoyt* case, here proximate cause was not defined as the sole cause but only as a causal relationship. Moreover, the term was not continuously repeated as it was in *Hoyt*. Instead, it was only referred to twice, the second time in reference to damages. Under these circumstances, it cannot be said that the jury was led to believe that proximate cause meant the only cause. Here, the charge read as a whole clearly reflects the standard set forth in *Rogers* and in *Hoyt* that in order to recover it was only necessary to prove that Reading Company was in whole or in part negligent.

Finally, appellant asserts as error the District Judge's refusal to permit her expert witness, Mr. Walter Peffley, to testify. At trial, the appellant proffered his testimony as to the operation of signals and the safety precautions that should be taken when working on signals. Counsel for the appellee objected on the grounds that the expert was not listed in the pretrial order, that the question of the operation of the signals was not in issue,[12] and that he

7. 352 U.S. at 506, 77 S.Ct. at 448.

8. 243 F.2d at 843.

9. *Id.*

10. Appendix, pp. 74a–75a.

11. *Id.* at 74a.

12. The appellee asserted that the only question in issue was whether the engineer acted negligently. This, he argued, was the position set forth in the appellant's pretrial memorandum which reads:

"At or about 1:40 P.M., during a driving snow storm, a sixty-eight (68)

was surprised by this offer. The objection was sustained on the grounds alleged by the appellee. The District Judge adopted this position in his opinion denying appellant's motion for a new trial.[13]

The record indicates that appellant's pretrial memorandum filed September 18, 1968, did specify that an expert witness would be named later. However, another District Judge's pretrial order, filed November 4, 1968, stated that there would be no changes in the positions taken by counsel in their memoranda and that there would be no amendments. On December 9, 1968, the appellant filed a supplemental memorandum listing, among a number of others, Mr. Peffley as a witness. It did not indicate that

he would testify as an expert and was filed without permission of the court.

One of the main purposes of the pretrial conference is to formulate the issues to be litigated to aid the parties in preparation for trial.[14] If counsel are permitted to change the positions taken at pretrial obviously the effectiveness of this procedure is destroyed. For this reason the pretrial order is generally binding on the parties.[15] It cannot be modified without the permission of the court and a showing of manifest injustice.[16] The decision of whether or not to permit a change is within the discretion of the trial judge.[17] Appellate interference with this discretion should be kept at a minimum. It

---

car westbound Reading freight train with two (2) locomotives travelling at upwards of fifty (50) miles per hour, struck Plaintiff's decedent inflicting mortal injuries upon him, without the knowledge of the engine crew until they arrived at the Rutherford yard at Harrisburg, in excess of twenty (20) miles to the west."

13. The District Court held:
"Another issue raised by plaintiff involves the calling as a witness, one Walter Peffley. Suffice it to say that he was not listed in the pre-trial memorandum. The pre-trial order stated that discovery was completed and that the issues were as stated in the respective memoranda. (As heretofore stated, whether the train was being operated negligently under all the circumstances.) More than a month later, plaintiff filed, without any authority whatsoever, a 'supplemental pre-trial memorandum.' In it he listed, in addition to members of decedent's family, twenty witnesses, none of whom were called except Johnson, who was listed in the original and supplemental memorandum as a liability witness. In the supplemental, we find 'Walter L. Peffley, 1237 Willow Street, Lebanon, Pa.' He was not identified as an *expert or otherwise*. At trial we asked for an offer of proof and for the first time learned that he had been listed *after* the concluded pre-trial conference without authority, and furthermore, was an *expert*. Needless to say, defendant, in effect, pleaded surprise. We could have exercised our discretion and refused to allow him to testify in

view of the clear violation of the Rules of Civil Procedure promulgating the Standing Orders of the Court. However, the problem was discussed at length, and we learned that he was an expert on the operation of switches on railroads. This was obviously not an issue in the case and would have done nothing more than to completely confuse the jury. Accordingly, we refused to allow him to testify. Had we done otherwise, it would not have added a scintilla of evidence helpful to the plaintiff's case. Counsel without qualification stated at argument that without the testimony of Peffley he had no case. The fact is that *with or without he had none*. The case should not have gone to the jury, but when it did the plaintiff obtained all and more than justice requires."
Ely v. Reading Co., No. 39164 (E.D.Pa. July 7, 1969).

14. Mull v. Ford Motor Company, 368 F.2d 713, 716 (2 Cir. 1966); McCarthy v. Lerner Stores Corp., 9 F.R.D. 31 (D.C. Cir. 1949); 3 Moore's Federal Practice § 16.11, p. 1118 (2d ed. 1968). For a discussion of the importance of the pretrial procedure see Payne v. SS Nabob, 302 F.2d 803, 807 (3 Cir. 1962).

15. 3 Moore, *supra*, § 16.19, pp. 1130–31.

16. Federal Rules of Civil Procedure 16; 3 Moore, *supra*, § 16.20, pp. 1136–39.

17. McKey v. Fairbairn, 120 U.S.App.D.C. 250, 345 F.2d 739, 742 (1965); Globe Cereal Mills v. Scrivener, 240 F.2d 330, 335 (10 Cir. 1956).

should only be exercised where there is a clear abuse of discretion.[18]

Obviously there was no room for expert testimony in this case as to the operation of signals because it was shown without contradiction that they were in good operating order. Nor was there any indication that there could be any proof of negligence offered in the actual operation of the train. Again, without contradiction, it appeared to be running within its proper speed limit and could not be expected to do less because of a sudden snow storm. What the appellant intended to show by the expert was that Mr. Johnson shoud have acted as a lookout, that he should have telephoned to ascertain whether any train was due to pass while he and the decedent were prosecuting their duties and that he should have adjusted the signals so as to control the movement of any train approaching the place of work.

▮ Of course rigidity in enforcement of pretrial procedure may not be tolerated at the expense of the perpetration of manifest injustice. But here there was no mere arbitrary action. Appellee's attorney failed to give the required notice that he intended to call Mr. Peffley as an expert and thus failed to apprise his adversary of information utterly essential to the preparation of a defense. Appellee. asserted that had the witness been permitted to testify he would have been deprived of an opportunity to prepare a refutation of such expert testimony. The District Judge in chambers entertained. an extensive argument. He concluded to exclude the witness in the face of appellee's objections. This was well within the discretion of the District Judge and cannot be termed error.

The judgment of the United States District Court for the Eastern District of Pennsylvania of March 26, 1969, in favor of the appellee, Reading Company,

and the order of July 7, 1969, denying the motion of Eleanor Ely, Administratrix of the estate of Elmer Ely, appellant, for a new trial, will be affirmed.

18. See Manbeck v. Ostrowski, 128 U.S.App. D.C. 1, 384 F.2d 970, 975 (1967) where it was stated that "absent perceptible irregularity in a process so largely discretionary, we are loath to disturb the result."