**Burton S. WENDKOS, t/a Pop Corn Sez Co., et al.**

**v.**

**ABC CONSOLIDATED CORPORATION et al.**

**VEND–A–SNAK, INC.**

**v.**

**ABC CONSOLIDATED CORPORATION et al.**

**Civ. A. Nos. 38542, 38543.**

United States District Court, E. D. Pennsylvania.

July 12, 1974.

Melvin Lashner, Adelman & Lavine, Philadelphia, Pa., for plaintiffs.

Bancroft D. Haviland, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This is an antitrust case. Plaintiff Burton S. Wendkos, trading as Pop Corn Sez Co., is a manufacturer of popcorn. Plaintiff Vend-a-Snak, Inc. owns 100 popcorn machines which it stocks with Wendkos' popcorn. Wendkos and Vend-a-Snak[1] allege that defendants ABC Consolidated Corporation (ABC) and Berlo Vending Company,[2] a fully owned subsidiary of ABC, have unlawfully attempted to monopolize and have monopolized the business of supplying and operating concessions and vending machines for indoor and outdoor motion picture theatres throughout the United States and, more particularly, in the Philadelphia and New York film exchange area, which includes Pennsylvania, New York, New Jersey, and Delaware. Presently before the court is defendant's request for rulings on certain points of law.

### I.

Throughout the preliminary stages of this case, plaintiff rested his claims on ABC's alleged violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and § 7 of the Clayton Act, 15 U.S.C. § 18. In proposing provisions for a final pretrial order, plaintiff set forth for the first time an allegation of illegal tying practices in violation of § 3 of the Clayton Act, 15 U.S.C. § 14. "Rules governing tying arrangements are designed to strike . . . at the use of a dominant desired product to compel the purchase of a second, distinct commodity. In effect, the forced purchase of the second, tied product is a price exacted for the purchase of the dominant, tying product." Siegel v. Chicken De-

light, Inc., 448 F.2d 43, 47 (9th Cir. 1971); Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 614, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). The crux of plaintiff's tying complaint is that ABC achieved competitive dominance in the area of concession services and products by conditioning its willingness to make sizeable loans without interest to movie theatres on the theatres' willingness to purchase its products and services. ABC contends that Clayton § 3 is inapplicable to this case as a matter of law and that regardless of the substantive merits of the claim, plaintiff waived it by waiting eight years before setting it forth.

Section 3 of the Clayton Act, 15 U.S.C. § 14 provides in pertinent part:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, . . . for use, consumption, or resale within the United States . . . or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

ABC argues (1) that money is not a "commodity" for Clayton § 3 purposes, and (2) that it is in the business of selling a service, which is not covered by Clayton § 3, rather than a product or a line of products, which would be.

Since it is axiomatic that both the "tying" and the "tied" products

---

1. Hereinafter jointly referred to as plaintiff or Wendkos.

2. Hereinafter jointly referred to as defendant or ABC.

must be covered by Clayton § 3, either of ABC's arguments, if accepted, would doom plaintiff's claim under this section. I find that ABC is correct on both points. It seems clear that the term "commodities" for Clayton § 3 purposes does not include money in the form of loans. Plaintiff has acknowledged that there is no meaningful difference between this case and United States v. Investors Diversified Services, Inc., 102 F.Supp. 645 (D.Minn.1951), in which the court held that loans made on the condition that recipients take out hazard insurance with the lender were not tying products under Clayton § 3. The court's review of the legislative history convinced it that Congress intended that the phrase "other commodities" relate back to the terms "goods, wares, merchandise, machinery, supplies," and that if these words were given their ordinary meaning they would "not include money which . . . is a medium of exchange." 102 F.Supp. at 648. There is no support for plaintiff's assertion that the terms of Clayton § 3 have been interpreted with increasing liberality in recent years. Bichel Optical Laboratories, Inc. v. Marquette Nat'l Bank of Minneapolis, 336 F.Supp. 1368 (D.Minn.1971), is a clear recent statement of the continuing view that lending money and charging interest is not a "commodity or sale" within the ambit of the Clayton Act. More generally, several recent cases have underscored the principle that the term "commodities" is construed strictly, and does not include, e. g., entertainment tickets which are revocable licenses rather than commodities, Kennedy Theatre Ticket Service v. Ticketron, Inc., 342 F.Supp. 922 (E.D.Pa.1972); mutual fund shares, Baum v. Investors Diversified Services, Inc., 409 F.2d 872 (7th

Cir. 1969); or a news report service, Tri-State Broadcasting Co. v. United Press Int'l, Inc., 369 F.2d 268 (5th Cir. 1966).[3] I conclude then, as a matter of law, that Clayton § 3 is inapplicable since the alleged tying product is money and, therefore, is not a "commodity" for Clayton § 3 purposes.

■■ The cases cited above make it clear that Clayton § 3 does not apply to tying arrangements where services are involved. Although it is unnecessary to determine the issue, in my view the alleged "tied" product here, ABC's actual concession business, also falls outside the ambit of the coverage of Clayton § 3. ABC does not supply only the merchandise which is sold in theatres; it furnishes an entire package which includes merchandise, vending machines, and personnel to run concession stands and to service and supply the vending machines. As the Fifth Circuit observed in Tri-State Broadcasting, supra, 369 F.2d at 270, "virtually no transfer of an intangible in the nature of a service, right, or privilege can be accomplished without the incidental involvement of tangibles . . . the dominant nature of the transaction must control whether it falls within the provisions of the Act." In this case, "service" is really the only word which effectively describes the concession package which ABC sells to contracting theatres. That being so, neither the tying nor the tied product comes within Clayton § 3, making the provision doubly inoperative.

■■ Despite this conclusion, the "tying" claim can continue to play a central part in plaintiff's case against ABC. The tying of a service to a product, or in this case, of money to a service, while not proscribed by Clayton § 3, can con-

3. Accord, Fleetway, Inc. v. Public Service Interstate Transportation Co., 72 F.2d 761 (3d Cir. 1934) (bus tickets); Northern Pacific Ry. Co. v. United States, 356 U.S. 1, 78 S. Ct. 514, 2 L.Ed.2d 545 (1958) (railway services); United States v. Loew's Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1958) (license of movie pictures for television exhibition).

Although most of the cases have arisen under § 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), the term "commodities" is defined identically under §§ 2 and 3 of the Clayton Act. Baum, supra, 409 F.2d at 875; Columbia Broadcasting System, Inc. v. Amana Refrigeration, Inc., 295 F.2d 375 (7th Cir. 1961), cert. denied, 369 U.S. 812, 82 S.Ct. 689, 7 L.Ed.2d 612 (1962).

stitute a restraint of trade in violation of § 1 of the Sherman Act. See, *e. g.*, Northern Pacific Ry. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed. 2d 545 (1958); Fortner Enterprises v. U. S. Steel, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). Where tying agreements are exacted, competition on the merits with respect to the tied product will inevitably be curbed. Indeed, "tying agreements serve hardly any purpose beyond the suppression of competition." *Standard Oil Co. of California v. United States*, 337 U.S. 293, 305–306, 69 S.Ct. 1051, 1058, 93 L.Ed. 1371 (1949). "They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power or leverage in another market." *Northern Pacific Ry. Co., supra,* 356 U.S. at 5–6, 78 S.Ct. at 518. For these reasons, tying arrangements are in fact *per se* violations of Sherman § 1, if plaintiff can prove the substance of his allegations and show that ABC "has sufficient economic power to appreciably restrain free competition in the market for the tied product and a 'not insubstantial' amount of interstate commerce is affected." *Northern Pacific Ry. Co., supra*; International Salt Co., Inc. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L. Ed. 20 (1947).

■■ This analysis is premised, of course, on the assumption that allowing plaintiff to state a claim for "tying" at this point would not unduly prejudice ABC. Despite ABC's protests, it is my view that no prejudice results from this "tying claim." It is true that allegations of tying were not set forth with precision in the complaint. However, "it is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the

merits to be avoided on the basis of such mere technicalities." Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L. Ed.2d 80 (1957). The complaint [4] and even the pretrial order [5] can be amended where the court believes that justice on the merits requires it.

The substance of the tying allegation has been part of this case since its inception. Paragraph 25 of the complaint alleges that ABC "offered and made preclusive and unwarranted advances of funds, loans or periodic commission payments to motion picture theatre owners and operators in such substantial amounts as to foreclose competition . . . ." Since the relevant line of commerce in this case was at all times the supplying of refreshments and services to movie theatres, the natural interpretation of this paragraph is that illegal tying was being alleged. If for some reason ABC resisted this obvious inference, it knew from the complaint that its policy of granting advances to movie theatres was under attack. "Thus, the only surprise which the defendants could properly claim would result from introduction of different legal issues. All litigation stands in the shadow of such a contingency." Castlegate v. Nat'l Tea Co., 34 F.R.D. 221, 226 (D. Col.1963). The cases cited by ABC in which the right to amend or inject new issues was denied were extreme cases in which either real prejudice would have resulted from last minute surprise or extensive further pretrial discovery would

4. See F.R.C.P. 15(a); Foman v. Davis, supra; Davenport v. Ralph N. Peters & Co., 386 F.2d 199 (4th Cir. 1967); Cooper v. American Emp. Ins. Co., 296 F.2d 303 (6th Cir. 1961); Fuhrer v. Fuhrer, 292 F.2d 140 (7th Cir. 1961); Rosenberg Bros. & Co. v. Arnold, 283 F.2d 406 (9th Cir. 1960).

5. See, e. g., Ely v. Reading Co., 424 F.2d 758 (3d Cir. 1970); Bettes v. Stonewall Ins. Co., 480 F.2d 92 (5th Cir. 1973); Sherman v. United States, 462 F.2d 577 (5th Cir. 1972).

have been required.[6] Those cases cannot be meaningfully equated with the situation here. I conclude that while Clayton § 3 is inapplicable, plaintiff can try to prove illegal tying arrangements under Sherman § 1.

## II.

■ The second point of contention between the parties concerns the effect of a 1964 FTC consent decree on this case. On November 4, 1959, the FTC issued a complaint against ABC, charging that the acquisitions by ABC of Confection Cabinet Corp. and Charles Sweet Co. violated § 7 of the Clayton Act, and that certain of ABC's practices and purchasing activities and the two acquisitions violated § 5 of the FTC Act. A hearing examiner conducted an extensive hearing and on April 15, 1964 concluded that the acquisitions both jointly and separately were violative of § 7. The hearing examiner recommended that the FTC order ABC to divest both the acquired companies. On October 22, 1964, the FTC and ABC entered into a consent decree ordering divestiture of "motion picture theatre concessions and contract rights for the operation of motion picture theatre concessions . . . having aggregate concessionary sales of not less than $4,000,000 of which not less than $3.5 million shall be in the New York and Philadelphia film exchange areas . . . ." In accordance with the consent agreement, the order contained no findings of fact or law beyond jurisdictional ones.

Section 5(a) of the Clayton Act provides:

"A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title. * * * * * "

The purpose of this section, "to minimize the burdens of litigation for injured private suitors by making available to them all matters previously established by the Government in antitrust actions," Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534 (1951), is not disputed. What is at issue here is whether this consent decree, entered after testimony was taken before a hearing examiner and after he had made findings, may be used by plaintiff pursuant to § 5(a) in presenting his case at trial.

For me this question is answered by Chief Judge Lord's reasoned opinion in Y & Y Popcorn Supply Co. v. ABC Vending Corp., 263 F.Supp. 709 (E.D. Pa.1967), in which he concluded that the same FTC consent decree involving ABC could not be used by a different antitrust plaintiff who sought to invoke its benefit pursuant to § 5(a). The cornerstone of Judge Lord's analysis was that § 5(a) was applicable only to final judgments to the effect that defendant had violated the antitrust laws. The Third Circuit Court of Appeals in Minnesota Mining & Manufacturing v. New Jersey Wood Finishing, 332 F.2d 346 (3d Cir. 1964), aff'd, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965), had stated its view that § 5 of the FTC Act, which by its terms proscribes "unfair methods of competition," is not an antitrust law.

6. See, e. g., Albee Homes, Inc. v. Lutman, 47 F.R.D. 258 (E.D.Pa.1969); Nevels v. Ford Motor Co., 439 F.2d 251 (5th Cir. 1971); Wheeler v. West India S.S. Co., 205 F.2d 354 (2d Cir. 1953).

Applying this to the FTC consent decree, Judge Lord concluded:

"[I]n this case it is not at all clear that the decree was 'to the effect' that the defendants violated one of the antitrust laws, i. e., Section 7 of the Clayton Act, rather than Section 5 of the FTC Act, which is not such a law.

To be sure, the hearing examiner found a violation of Section 7. But his decision was never adopted by the Commission. In fact, the order which the FTC issued departed substantially from the examiner's suggested decree in that it encompassed several of the additional abuses enumerated in Count II of the complaint, which dealt with FTC Act violations. It will be recalled that Count II began by incorporating the same factual charge of unlawful acquisitions as that contained in Count I. Therefore, it is conceivable that the FTC might have ultimately determined that the defendants' conduct throughout constituted only 'unfair methods of competition' not rising to the level of an 'antitrust law' violation." 263 F.Supp. at 713.

I am persuaded by the main thrust of Judge Lord's opinion that plaintiff, like Y & Y seven years ago, may not make use at trial of the FTC consent order which was entered against defendants. As Judge Lord pointed out, "since we cannot say that the FTC order was 'to the effect' that the defendants violated Section 7, we need not reach the question of whether the decree would have any probative value at all as to the merits of this case. Our decision also renders unnecessary any attempt to delineate those matters of which the FTC order 'would be an estoppel' and hence prima facie evidence in the present action." 263 F.Supp. at 713.

### III.

The complaint in this case was filed on July 21, 1965. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides federal court jurisdiction for plaintiffs seeking to prove damages resulting from "anything forbidden in the antitrust laws." Section 4B of the Clayton Act bars all actions under the antitrust statutes "unless commenced within four years after the cause of action accrued . . . ." Since the inception of this case, ABC has argued that Wendkos is limited by the statute of limitations to showing harm from acts committed after July 21, 1961. Plaintiff claims injury resulting from the execution of illegal tying agreements by ABC with various movie theatre owners. Defendant argues that when an antitrust violation allegedly results from a contractual arrangement, the cause of action accrues when "the blow which caused the damage was struck," i. e., at the time the contract was executed. See, e. g., Baldwin v. Loew's Inc., 312 F.2d 387, 391 (7th Cir. 1963); Metropolitan Liquor Co. v. Heublein, Inc., 305 F.Supp. 946 (E.D.Wisc.1969); Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 193 F.Supp. 401 (S.D.N.Y.1961). If ABC's argument is accepted, plaintiff would be foreclosed from proving damages relating to any lease agreement entered into prior to July 21, 1961, and most of the challenged leases were entered into before that date.

Plaintiff counters ABC's statute of limitations defense by invoking the tolling provisions of § 5(b) of the Clayton Act, 15 U.S.C. § 16(b). That section provides:

"Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereun-

der, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

The FTC and ABC entered into the consent decree on October 22, 1964. Plaintiff initiated this action on July 21, 1965, less than one year after the entry of the consent decree and therefore "within the period of suspension" under § 5(b). If the FTC action against ABC tolled the statute, plaintiff could introduce evidence of contracts entered into by defendant within the four year period prior to the filing of the FTC complaint on November 4, 1959, and recover damages for injuries suffered as a result of those contracts.

In Luria Steel & Trading Corp. v. Ogden Corp., 484 F.2d 1016 (3d Cir. 1973), the Court of Appeals held *inter alia* that an FTC proceeding to enforce § 5 of the FTC Act tolled the statute of limitations. The court acknowledged its statement in *New Jersey Wood, supra,* that the FTC Act was not an antitrust law, but pointed out that §§ 5(a) and (b) were not intended to be co-extensive. The conclusion that plaintiff is not entitled to the benefit of § 5(a) does not dictate the same result with respect to § 5(b). As the Supreme Court stated in *New Jersey Wood*:

> "When we turn from the express language of these two statutory provisions to the congressional policies underlying them, it becomes even more apparent that the applicability of § 5 (a) to Federal Trade Commission actions should not control the question of whether such proceedings toll the statute . . . .
>
> "In our view, . . . the two sections . . . are governed by different considerations as well as congressional policy objectives. This makes § 5(b) readily severable from § 5(a) . . . .

"It may be . . . that when it was enacted the tolling provision was a logical backstop for the prima facie evidence clause of § 5(a). But even though § 5(b) complements § 5(a) in this respect by permitting a litigant to await the outcome of government proceedings and use any judgment or decree rendered therein . . . it is certainly not restricted to that effect. As we have pointed out, the textual distinctions as well as the policy basis of § 5(b) indicate that it was to serve a more comprehensive function in the congressional scheme of things. The Government's initial action may aid the private litigant in a number of other ways. The pleadings, transcripts of testimony, exhibits and documents are available to him in most instances . . . . Moreover, difficult questions of law may be tested and definitively resolved before the private litigant enters the fray. The greater resources and expertise of the Commission and its staff render the private suitor a tremendous benefit aside from any value he may derive from a judgment or decree. Indeed, so useful is this service that government proceedings are recognized as a major source of evidence for private parties." 381 U.S. at 317–319, 85 S. Ct. at 1477.

 It is established then as a general rule that an FTC proceeding to enforce the FTC Act will trigger the tolling provisions of Clayton § 5(b). It follow *a fortiori* that an FTC proceeding, like the one in this case, to enforce both the FTC Act and § 7 of the Clayton Act, which is an antitrust law, also tolls the statute of limitations. The only remaining question is whether plaintiff's action against ABC is "based in whole or in part on any matter complained of" by the FTC in its proceeding. In Leh v. General Petroleum Corp., 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965), the Supreme Court effectuated the perceived intent of Congress to benefit private an-

titrust litigants by interpreting this provision of § 5(b) liberally. It rejected the idea that "a private claimant may invoke § 5(b) only if the conspiracy of which he complains has the same breadth and scope in time and participants as the conspiracy described in the government action on which he relies." 382 U.S. at 63, 86 S.Ct. at 209. "Substantial identity of parties" would suffice. Similarly, disparities between the time periods in which the two conspiracies were alleged to take place are also irrelevant. *Id.* at 59, 86 S.Ct. at 207. "Rather, effect must be given to the broad terms of the statute itself;" was the conduct alleged in the private action "based in whole or in part on *any matter* complained of" in the government's action. And "the applicability of § 5(b) must be limited to a comparison of the two complaints on their face . . . . The availability of § 5(b) to the private claimant may not be dependent on his ability to prove his case, however fatal failure may prove to his hopes of success on the merits." 382 U.S. at 65–66, 86 S.Ct. at 210. *Cf.* New Jersey Wood, 381 U.S. at 321–322, 85 S.Ct. 1473; *Luria*, 484 F.2d at 1022–1023; Rader v. Balfour, 440 F.2d 469, 473 (7th Cir. 1971).

Given these standards, I conclude that the statute of limitations in this case was tolled by § 5(b). As in *Y & Y Popcorn, supra,* plaintiff's complaint "is largely a catalogue of the anti-competitive abuses charged in the FTC proceeding." 263 F.Supp. at 711. Like the FTC complaint, Wendkos' complaint has charged that ABC's acquisitions of Confection Cabinet Corp. and Charles Sweets Co. violated § 7 of the Clayton Act. Plaintiff also alleges the same anti-competitive practices as the FTC, complaining of ABC's preclusive loans to the motion picture theatres designed to undercut competition on the merits of concession products or services (in essence, the tying claim discussed earlier), other inducements to the theatres, such as remodeled vending machines, fixtures or equipment, requiring long-term contract commitments from customers, and extracting favored treatment from suppliers. The fact that the FTC attacked these practices under § 5 of the FTC Act, whereas plaintiff seeks to prove violations of the Sherman Act does not detract from the identity of the complaints. ABC noted quite caustically at one point in its memorandum of law that plaintiff virtually "copied" the FTC's complaint. In § 5(b) of the Clayton Act Congress evinced an unmistakable intention not only to condone, but *to encourage* this kind of duplication. Given the content of plaintiff's complaint, he is entitled to the tolling benefits of § 5(b).

At oral argument, defendant contended that because plaintiff waited nearly a year after the entry of the FTC consent decree before filing suit, the statute of limitations should be regarded as having been suspended for only three years prior to the beginning of FTC proceedings rather than four. Defendant offers no authority for this novel proposition. *Luria* states clearly that if plaintiff brings suit within one year after completion of the FTC proceedings, he may sue for all damages accrued since the date four years before the FTC proceedings began, the time at which the running of the statute of limitations was suspended. 484 F.2d at 1023. In this case, Wendkos will be permitted to introduce evidence of contracts entered into by ABC from and after November 4, 1955. Whether ABC's contractual arrangements were unlawful or damaging to plaintiff's business remains to be explored at trial.