Karen KEIL, Plaintiff,

v.

ELI LILLY AND COMPANY, a Foreign Corporation, Defendant.

Civ. A. No. 75–70997.

United States District Court,
E. D. Michigan, S. D.

Nov. 6, 1980.

Lawrence S. Charfoos, Charfoos & Charfoos, Detroit, Mich., for plaintiff.

Lane Bauer, Shook, Hardy & Bacon, Kansas City, Mo., John E. S. Scott, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Defendant in this case has filed a motion requesting the court to prohibit plaintiff from presenting the "live" testimony at trial of one of her expert witnesses in lieu of utilizing the videotaped deposition of that witness. On October 9, 1980, after hearing oral argument on this motion, the court made an oral ruling granting the motion. On October 30, plaintiff filed a motion for reconsideration. This memorandum opinion and order sets forth more fully the basis of the October 9 ruling, and denies plaintiff's motion for reconsideration.

In this case, plaintiff alleges that she has suffered certain injuries as a result of her mother's ingestion of a drug manufactured by defendant, diethylstilbestrol (DES). Plaintiff's mother was prescribed this drug while pregnant with plaintiff in order to prevent a miscarriage. Plaintiff alleges that defendant was negligent in connection with the marketing of this drug and that defendant breached certain warranties. One of the factual allegations advanced by plaintiff in support of her theory of recovery is that the drug DES is not and was not efficacious in preventing miscarriages.

The expert whose presence at trial is objected to by defendant is Dr. Michael B. Shimkin. Dr. Shimkin is one of plaintiff's "efficacy" experts, and adheres to the view that DES is not useful in preventing miscarriages. Dr. Shimkin's deposition testimony indicates that his opinion on the efficacy of DES is based on studies of the drug published subsequent to the date of ingestion, including a study published in 1953 by Dr. W. S. Dieckmann of the University

of Chicago. In January, 1980, the court ruled that only efficacy evidence prior to the date of the ingestion of DES by plaintiff's mother would be admissible in this suit.[1]

Defendant asks that plaintiff be required to present Dr. Shimkin's testimony by videotape deposition, if at all, rather than by presenting the witness live at trial. Defendant's reasons for making this request, and the court's rationale in granting the request, are based on the history of plaintiff's planned use of the expert's testimony. Consequently, a detailed summary of that history follows.

1. *Planned use of the deposition.*

From at least October 19, 1979 to May 22, 1980, the parties operated under the agreement that Dr. Shimkin would be presented via videotape deposition. This agreement is evidenced by the letters exchanged between counsel for the parties, copies of which are attached to defendant's reply brief. Most important is an excerpt from plaintiff's counsel's letter to counsel for defendant: "Also, I plan on using the deposition of Dr. Michael B. Shimkin in toto in the matter of *Keil v. Lilly* as modified by the rulings of Judge Joiner as to efficacy and the mother's date of ingestion." Letter of March 5, 1980.

2. *New counsel takes over the case, and states an intent to present the witness live at trial.*

Trial of this case was scheduled for June 2, 1980. In May, however, the attorney who had been representing the plaintiff left his law firm, and new counsel from that firm took over the case, and requested an adjournment of the trial. This request was granted, and a pretrial conference held by the court in order to assist the parties' preparation for trial, then set for September 2. At this conference, defense counsel inquired of plaintiff's counsel whether he still planned on using the Shimkin deposition. At this time, plaintiff's counsel announced an intention to present the witness live at trial. The court directed plaintiff's counsel to inform defense counsel on a monthly basis and again on August 14, the date of the scheduled final pretrial conference, as to whether Dr. Shimkin would be present at the trial, or whether the deposition would be used.[2]

3. *Use of the deposition is planned again.*

On June 24, 1980, plaintiff reverted to the original plan of presenting the videotape deposition at trial.

This court, like most others, has a standing practice of requiring the parties to purge the depositions of inadmissible matter prior to trial. Thus, the parties commenced their efforts to edit the more than 8 hour deposition by agreement. The record reflects that they were able to agree on many deletions, but as of the pretrial conference of August 14, certain matters were still unresolved. The court directed plaintiff to submit further comments and proposals on the editing issues by August 19,

1. The relevancy of the efficacy or nonefficacy of DES in preventing miscarriages has been hotly contested in this case. In January of 1980, defendant made a motion in limine to exclude all efficacy testimony on the ground that it was irrelevant to the issues in this lawsuit. The court heard oral argument on that motion, and entered an order granting defendant's motion in part, and excluding efficacy evidence subsequent to the date of ingestion only.

The efficacy issue was again raised in May of this year when plaintiff announced an intention to rely in some manner on the results of the Dieckmann study referred to above. Plaintiff alleged that defendant either knew or should have known of the results of this study prior to the dates of publication and ingestion. Be-

cause plaintiff was not able to make an offer of proof to support this allegation, however, the court ruled the study inadmissible in accordance with its January ruling on the same issue. The ruling on the Dieckmann study was made on September 2.

2. Order of May 22, 1980.

This directive was necessary because of Dr. Shimkin's advanced age and ailing health. If Dr. Shimkin became ill or, for some other reason, could not attend the trial, then the parties and the court understood that the deposition would be presented at trial. Consequently, the defendant had to be informed on a fairly regular basis as to Dr. Shimkin's availability for trial.

1980. In making this directive, however, the court noted that a ruling on the admissibility of the Dieckmann study had not yet been made and would not be made until the first week of trial. While recognizing that the editing of the Shimkin deposition would be affected by the court's subsequent ruling on the Dieckmann study, the court nonetheless directed the plaintiff to work around the problem.[3]

4. *The trial is adjourned and the Shimkin deposition is edited by court order.*

During the week before trial, the court was informed that a serious tragedy had occurred in plaintiff's family, and motion to adjourn the trial was granted on September 3. Because the time had already been set aside, however, the court and attorneys worked together during the next two days to resolve deposition editing issues on which the attorneys had been unable to agree. These editing sessions took place on September 4 and 5, on the record. After reviewing Dr. Shimkin's deposition testimony thoroughly and carefully, the court concluded that the doctor's opinion on the efficacy of DES in preventing miscarriages was based on post-ingestion studies, and that much of his testimony was thus inadmissible.

5. *Plaintiff announces an intent to present Dr. Shimkin at trial.*

On September 11, plaintiff sent a letter to defendant announcing that "Dr. Shimkin has agreed to testify in person at trial. As such, there will be no need to show his videotape deposition." The court was informed of this change in plans on September 12 by plaintiff's counsel and he was told that the court's receipt of the information could not be construed as permission to use Dr. Shimkin at trial.

6. *Defendant files its motion to exclude Dr. Shimkin from testifying at trial.*

Defendant's motion to prohibit plaintiff from presenting Dr. Shimkin live at trial is based on several grounds: first, defendant points to the many hours devoted to the preparation of the deposition for trial and objects to the waste of counsel's time and the client's money if the deposition is not used; second, defendant objects to having to prepare to cross examine this witness in the few remaining weeks before trial and argues in support of this objection that this witness will be difficult to prepare for inasmuch as he has written over 300 articles on the subject matter of this lawsuit, and is obviously contemplating a change from his deposition testimony; and third, defendant argues that plaintiff will suffer no prejudice in that she has two other efficacy experts to testify. Defendant argues that legal authority for the relief it requests can be found in F.R.C.P. 16 and the cases decided thereunder, which state that a final pretrial order governs the progress of the case unless modified to prevent manifest injustice. There is no cause to modify the pretrial order, according to defendant. Having made her choice, plaintiff should be compelled to abide by it.

Plaintiff argues that she never made a "choice" which is or should be binding on her relative to the method of presenting Dr. Shimkin at trial. Additionally, plaintiff argues that she has always preferred to use Dr. Shimkin live, but requested him to "endure the personally harsh rigors of transcontinental travel" to testify in this case only after the court's rulings on the admissibility of certain aspects of his deposition rendered the deposition "drastically abridged." Plaintiff points to a well established preference in the law for live testimony over deposition testimony, and argues that that preference should control here. Finally, plaintiff expresses some doubt about the court's ability to give defendant the relief which it requests.

---

**3.** The court delayed ruling on the Dieckmann study because it could not be determined whether, on the record then before the court, the defendant did have knowledge of the results of the study prior to the date of ingestion. See n.1. The plaintiff was ordered to make an offer of proof as to her allegations of defend-

ant's knowledge on or before August 27. This matter was then scheduled to be taken up during the first week of trial on a day set aside for resolution of miscellaneous matters. As noted above, the study was ruled inadmissible on September 2.

In support of her motion for reconsideration,[4] plaintiff asserts that the court's rulings on the admissibility of Dr. Shimkin's deposition testimony were erroneous, and that Dr. Shimkin was unwilling to make the trip to Detroit for trial until after he learned that the deposition had been abridged by court order. The latter assertion is supported by Dr. Shimkin's personal affidavit.

The sequence of events set forth above indicates that significant efforts have been made by the parties and by the court to prepare this case for trial in an orderly, efficient manner. Defendant has sought and obtained rulings on the efficacy issue well in advance of the trial date(s). Additionally, the parties have worked together and with the court to prepare their depositions for trial, including the deposition of Dr. Shimkin. The question presented by plaintiff's announced intent to present Dr. Shimkin live at trial is whether the progress achieved by the parties and the court in trial preparation can be set aside, or should be set aside, in order to accommodate plaintiff's desire to present the live testimony of the witness.

Plaintiff argues that there is a strong preference in the law for live testimony over deposition testimony, and that that preference should prevail here. The preference on which plaintiff relies, however, is significantly undercut when the deponent is presented via videotape rather than through the procedure of having the testimony read to the jury from the written transcript. A videotape deposition gives jurors the opportunity to observe the witness answering the questions of both the examining and cross examining attorneys. Thus, the jurors have a countenance upon which they can base assessments of credibility. In short, the arguments advanced by plaintiff have much less force with respect to a videotaped deposition than with respect to a transcribed deposition.

Plaintiff also argues that no final and binding choice was ever made to use the Shimkin deposition in lieu of presenting the witness live at trial. This assertion, however, does no more than argue the conclusion which plaintiff would like this court to reach. The question is whether a decision to use the deposition, admittedly made in June of 1980, the resultant conduct of the court and counsel for defendant, and orders entered by the court relative to this issue, combine to require that the June decision be made binding on plaintiff. There are compelling reasons for answering this question in the affirmative.

The admissibility of efficacy evidence is central to the dispute surrounding the use of Dr. Shimkin at trial. As noted above, defendant sought and obtained rulings on the efficacy issue well in advance of the trial date(s) in this case. Additionally, the court instructed the parties to follow a certain schedule for the editing of the Shimkin deposition, and when an agreement between the attorneys proved impossible, spent an entire morning with counsel in an on-the-record editing session, making rulings on the admissibility of much of the doctor's testimony. These rulings were based, of course, on the prior rulings on the admissibility of efficacy evidence in general. Allowing plaintiff to now change plans

---

4. Although not a basis for the court's decision, it is appropriate to point out that plaintiff's motion for reconsideration does not comply with Local Rule IX(n) which allows ten days to file such a motion after entry of the order. Plaintiff's motion was filed 21 days after the order was announced from the bench. To the extent that plaintiff challenges the rulings made by the court on the deposition testimony, this challenge is likewise untimely. Finally, Local Rule IX(n) provides:

> Grounds. Generally, and without restricting the discretion of the Court, motions for rehearing which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the Court and the parties have been misled but also that a different disposition of the case must result from a correction thereof.

The arguments raised in the motion for reconsideration have been considered by the court with respect to the admissibility of the Shimkin deposition testimony and with respect to defendant's initial motion to prohibit the use of Dr. Shimkin at trial.

and present Dr. Shimkin live at trial would have two deleterious effects: first, defendant would lose the benefit of rulings sought, obtained, and *applied to this very witness*; second, the court would necessarily be involved in a duplication of effort, in that rulings once made would have to be reconsidered and reapplied to the *live* witness' testimony. Neither result can be countenanced. What is truly at stake here is the ability of counsel to prepare for trial and the ability of the court to assist in this process. The progress made in this case cannot so easily be set aside.

Preserving the results of the efforts of the attorneys and the court to purge the Shimkin deposition of inadmissible testimony also furthers the policy which underlies Federal Rule of Evidence 103(c):

> In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

The Advisory Committee Note to this rule states:

> This subdivision proceeds on the supposition that a ruling which excludes evidence in a jury case is likely to be a pointless procedure if the excluded evidence nevertheless comes to the attention of the jury.

The court's policy of requiring depositions to be purged of offensive matter prior to trial thus avoids the evil at which Rule 103(c) was directed. Additionally, by requiring that evidentiary issues be resolved prior to trial, the court insures that the momentum of the trial will not be interrupted by a constant barrage of objections to the admissibility of the testimony. As a result, the trial proceeds in an efficient, orderly way, and the jury is not exposed to prejudicial and inadmissible matter. These are valid and worthy goals, goals achieved in large measure by the efforts of the attorneys and the court in this case to complete the editing of the Shimkin deposition prior to trial. As of September 4, the date of the editing session in which the court participated, the deposition was purged of inadmissible matter, and was fully prepared for presentation to the jury. If Dr. Shimkin were to testify live at the trial, however, the progress achieved by the purging efforts in this case would be lost, and the orderly and fair trial of the substantive issues in this lawsuit jeopardized.

Finally, this case presents a compelling situation in which modification of trial preparation plans should not be allowed. The clear intent in seeking to present this witness at trial in lieu of his deposition is to avoid the effect of this court's prior rulings on the admissibility of this expert's opinion. Dr. Shimkin has thoroughly committed himself, in his deposition, to an opinion based on matters which this court has held are outside the scope of admissible evidence at trial. If he were to testify at trial that his opinions were based on other than inadmissible evidence, he would, of course, be subject to impeachment. The paradox confronting the defendant would be the necessity to impeach the doctor with testimony which the court has ruled inadmissible at the defendant's own request. This is clearly a no-win situation for the defendant, and an anomalous one to be in, given that defendant has prevailed in large measure on its motions in limine regarding the admissibility of much of this expert's testimony.

Plaintiff, however, has expressed doubt that the court has the authority to enter an order precluding the use of this witness live at trial. While she concedes that the court could prevent a party from calling a new witness, the existence of whom was never disclosed to opposing counsel, she argues that Dr. Shimkin does not fall within this narrow category, and that she is entitled to choose her method of presenting his testimony.

Authority for preventing plaintiff's use of her witness live at trial is found in F.R.C.P. 16, which states in pertinent part that a pretrial order "controls the subsequent course of the action unless modified at the trial to prevent manifest injustice."

Indeed, it is not unusual for a court to hold a party to commitments made at a pretrial conference or in a pretrial order. See, e. g., *Kozar v. Chesapeake and Ohio Ry.*, 320 F.Supp. 335 (W.D.Mich.1970), *mod. on other grounds*, 449 F.2d 1238 (6th Cir. 1971); *Colvin v. United States*, 549 F.2d 1338 (9th Cir. 1977); *Ely v. Reading Co.*, 424 F.2d 758 (3d Cir. 1970). Generally, see 6 Wright and Miller, *Federal Practice and Procedure*, § 1527.

Plaintiff points to the absence of any order of the court requiring that a choice on method of presentation of this witness be made by a certain time, or one explicitly stating that the choice made could not be modified. Additionally, plaintiff's own proffered pretrial order does not specify whether her witnesses will testify live or by deposition. Nonetheless, the history of this case demonstrates a clear understanding that the decision to use Dr. Shimkin's deposition was a final one, at least as of September 4, 1980. Specifically, the court's order of May 22 indicates that a final choice on the method of presentation of this witness' testimony be made by August 14, the date of the final pretrial conference in this case. Additionally, the court, cognizant of the decision of plaintiff to use the deposition, ordered that editing efforts be made as of a certain date. Of course, the defendant spent many hours in reliance on plaintiff's announced intent to use the deposition, suggesting deletions and reviewing the testimony. Finally, and most importantly, counsel involved the court in the editing process by seeking rulings on the admissibility of the witness' opinion testimony. At no time did plaintiff's counsel inform the court, or attempt to reserve the right to inform the court at a later time, that the time spent and rulings made on the Shimkin deposition might be unnecessary because the deposition might or might not be used. These events amply demonstrate a

commitment by plaintiff's counsel to proceed to trial using the Shimkin deposition. This commitment is and should be as binding as any explicit reference in a written order would have been.

Nonetheless, such a commitment could be altered if necessary to prevent manifest injustice. Requiring plaintiff to abide by her decision to use the Shimkin deposition will not, however, result in manifest injustice. Rather, the sole result of such a ruling will be to retain the validity of substantive evidentiary rulings made and applied to the witness. If plaintiff disagreed with those rulings, other procedures existed by which they could have been challenged.[5]

Finally, it should be emphasized that defendant would be prejudiced by denial of its motion. Defendant's diligence in trial preparation has been noted and need not be repeated here. If all that were at stake on this motion were lost time and money, however, defendant's motion could be denied with appropriate protective provisions to compensate defendant for expenses and costs associated with the work on this witness' deposition. The court will not, however, deprive defendant of the benefit of the rulings it has obtained on this issue. Unless the rulings are modified by direct challenge, they should continue to have full force and effect.

Under the circumstances presented in this case, the court cannot allow the progress made by the parties and the court in trial preparation to be altered by the unilateral conduct of one party. Likewise, the court cannot allow the plaintiff to circumvent its rulings on this witness' testimony. In accordance with the above, the defendant's motion was properly granted. Plaintiff's motion for reconsideration is denied.

Defendant has filed a motion for costs associated with the need to bring the mo-

---

**5.** The court granted plaintiff's counsel permission to raise objections to the court's rulings of September 4 on the admissibility of the deposition testimony. Plaintiff requested an extension of time for filing objections to have an opportunity to review the transcript of the editing session in which the court made its rulings.

The court granted the request for an extension of time, and set a new deadline for filing objections. That deadline passed with no objections filed. Importantly, the court's decision to prohibit Dr. Shimkin from testifying at trial was announced at least two weeks before the deadline for filing objections.

tion to prohibit the use of Dr. Shimkin at trial. This motion will be taken up at the conclusion of the case.

So ordered.