ALWORTH–WASHBURN CO. v. HELVER-
ING, Commissioner of Internal Revenue.
No. 5858.

Court of Appeals of the District of Columbia.
Argued Oct. 10, 1933.
Decided Nov. 6, 1933.

Paul E. Shorb and M. P. Wormhoudt, both of Washington, D. C., for petitioner.

G. A. Youngquist, Sewall Key, John MacC. Hudson, C. M. Charest, E. Barrett Prettyman, and A. H. Fast, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Petitioner is a Minnesota corporation. It was in process of liquidation and in 1926 sold all of its remaining assets for a little less than $600,000. The cash received did not exceed one-fourth of the total purchase price. It therefore elected to report the income from the transaction on the installment basis, and this was accepted by the Commissioner.

The applicable statute is section 212 (d) of the Revenue Act of 1926 (44 Stat. 23, 26 USCA § 953 (d). Under the provisions of this section a taxpayer who sells real property, where the initial payment does not exceed one-fourth of the purchase price, may return proportionately the taxable profit in the succeeding years in which the installment payments are actually received.

In this case there is no dispute as to the total amount of profit derived from the sale, nor did the Commissioner question petitioner's right to spread this profit over the years of actual payment, but in the year following the sale petitioner indorsed in blank the notes for the remainder of the sale price and discounted or sold the same to a bank for cash, receiving the face amount thereof with interest.

The question which we have to decide is whether the profit reflected in the notes discounted or sold was income to petitioner in 1927 (the year in which the transaction with the bank was had) or in the subsequent years in which the notes were actually paid to the bank.

The Commissioner insists that when petitioner discounted the notes and received full payment therefor, the transaction was closed and the entire gain was then realized and was therefore taxable. Petitioner, on the other hand, insists that, because of its indorsement of the notes, it incurred a continuing liability to the bank which deferred its realization of gain until the liability was extinguished by the payment of the notes. It says that its relation to the bank was that of borrower; that the cash received was a loan; and that it did not and could not know the amount of profit it would realize on the notes until they were finally paid.

The main question, in circumstances nearly identical with those we have here, was passed on by the Court of Appeals of the Second Circuit (Elmer v. Commissioner, 65 F. (2d) 568, 569). In that case the taxpayer was the selling agent for Ford cars. The terms of sale contemplated a partial payment in cash and a series of weekly or monthly notes, which were in turn secured by a contract of conditional sale reserving title. The taxpayer sold and assigned the contracts to a finance corporation and indorsed the customer's notes and in that way received in cash the total purchase price of the car. The agreement between the finance company and himself contemplated that if there should be a default in any of the notes, he would stand between the finance company and loss. In these circumstances, Judge Learned Hand, speaking for the court, held that the entire profit accrued in the year in which the sale and assignment of the contracts occurred, and to the proposition whether the transfer of the notes was a loan or a sale, said: "If a merchant discounts his customer's note at a bank, endorsing it, but getting immediate credit for its discount value, it would be a most unnatural thing to consider it a loan from the bank. He remains liable if the customer defaults, but the collection is in the bank's hands, and the transaction is closed in the absence of a default."

It is undoubtedly a fact that the terms "loan," "discount," and "sale," as applied to a transaction such as is involved in this case, are frequently so used by courts as to result in a rather vague and inexact distinction between them. The question arises mostly in cases involving usury statutes, and it is often said that it is the one or the other according to the nature of the transaction and the facts attending it. In some cases it is held that a discount of an existing chose in action, when not used as a cover for usury, even though the rate of discount agreed upon is more than is permissible under the usury statutes, is not a loan within the meaning of those statutes but a sale, and this though the seller indorses and guarantees the paper upon the transfer to the purchaser. See Niagara County Bank v. Baker, 15 Ohio St. 68, at page 85. See, also, Cram v. Hendricks, 7 Wend. (N. Y.) 569;

Cobb v. Titus, 10 N. Y. 198; Rapelye v. Anderson, 4 Hill (N. Y.) 472.

On the other hand, there is a strong intimation to the contrary in National Bank of Gloversville v. Johnson, 104 U. S. 271, 277, 26 L. Ed. 742. In that case a national bank in New York discounted promissory notes of the holder, who was not the maker, at the rate of 12 per cent., which was in excess of the legal rate. The payee indorsed the notes, and, after their payment by the maker, he sued the bank and recovered double the excess interest charges. The Supreme Court, speaking of the nature of the transaction, said: "Unquestionably the transfer of the notes, which forms the basis of this controversy, if not a loan, was a discount."

But in the view we take of this case, it is not necessary we should be at pains to find a subtle distinction between the words we have discussed. It is enough to say that in its ordinary signification and in the language of the banking world, the word "loan" implies an advance of money upon an absolute promise to repay; the word "discount," a deduction or drawback upon an advance of money upon an evidence of debt payable at a future date; and a "sale," an absolute transfer of property or something of value from one person to another for a valuable consideration. Whether the transfer of the notes received by petitioner as part of the purchase price for its property be denominated a loan, a sale, a discount, or a sale by way of discount, is not determinative of the rights of this case. The question rather is whether the tax statutes, fairly construed, make the money received by petitioner in the year 1927 gain or profits within the purview of section 213 of the Revenue Act of 1926 (44 Stat. 23, 26 USCA § 954).

It is conceded by petitioner that in 1927 by the transfer in question it received from the bank in cash the total face value of the notes which it had received the previous year in the sale of its property. It is likewise conceded that the transfer effected a complete change in title to the notes. Thereafter the bank held them as its own property, though it also held petitioner as indorser. Petitioner, on the other hand, received the money and thereupon distributed all but an insignificant part of it to its stockholders, though the distribution was called an advance, presumably in order that it might be recalled, if its liability as indorser was thereafter enforced. It is therefore apparent that petitioner had received in cash the whole balance of the purchase price of the property. The transaction in its original form was thereby changed. Petitioner no longer had any title or right to the annual installments of the purchase price. It had got all its money and, except for its contingent liability as indorser, the transaction was closed and the installment feature abandoned.

To say that under these circumstances petitioner is entitled to the benefits of the installment provision would be to extend that provision beyond its plain intendment. As the Supreme Court said in Weiss v. Stearn, 265 U. S. 242, 254, 44 S. Ct. 490, 492, 68 L. Ed. 1001, 33 A. L. R. 520, "Questions of taxation must be determined by viewing what was actually done." As we have seen, what was done here was the receipt and distribution by petitioner in 1927 of its remaining profits from the transaction in question. The act specifically makes such profits taxable in the year in which received and the contingent liability which petitioner assumed as indorser does not extend the time or make the provision referred to less effective. This, in principle, was decided by the Supreme Court in Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383, Burnet v. Thompson Oil & Gas Co., 283 U. S. 301, 51 S. Ct. 418, 75 L. Ed. 1049, and North American Oil Consol. v. Burnet, 286 U. S. 417, 52 S. Ct. 613, 76 L. Ed. 1197. In those cases it was held that a taxpayer should return income in the year in which it is received without regard to the fact that there may be claims against it not determinable until a subsequent year.

Affirmed.