UNITED STATES v. INVESTORS DIVERSIFIED SERVICES, Inc. et al.

Civ. No. 3713.

United States District Court
D. Minnesota, Fourth Division.

Dec. 18, 1951.

This cause comes before the Court on defendants' motion to strike from the complaint all reference to a violation of Section 3 of the Clayton Anti-trust Act, 15 U.S.C.A. § 14.

G. A. Youngquist and C. E Phillips, Minneapolis, Minn. (Fowler, Youngquist, Furber, Taney & Johnson and John R. Goetz, Minneapolis, Minn., of counsel), for defendants in support of said motion.

Willis L. Hotchkiss, Ralph M. McCareins and Charles W. Houchins, of the Anti-trust Division, Dept. of Justice, Chicago, Ill., for plaintiff in opposition thereto.

NORDBYE, Chief Judge.

Plaintiff's complaint charges that defendants are engaged in the business of making loans secured by mortgages on real estate, and that as a condition for obtaining the loans the mortgagor must agree that only

defendants shall write, place, or sell to the mortgagor the hazard insurance which the mortgage requires the mortgagor to carry upon the mortgaged property. Plaintiff contends that the effect of such conditions and agreements excludes all but defendants from writing insurance on the mortgaged property and ties in the selling of insurance to the making of mortgage loans. Such activities, plaintiff alleges, violate Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, and Section 3 of the Clayton Act, 15 U.S.C.A. § 14, and require the injunctive and other relief sought in the complaint against defendants.

Defendants move to strike the allegations charging a violation of Section 3 of the Clayton Act upon the premise that the facts stated by the complaint fail to charge a violation of that statute. The validity of the motion's premises becomes the broad issue here.

Section 3 of the Clayton Act provides, "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia * * * on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

The provision prohibits two types of situations: (1) the so-called "tying in" contracts, and (2) the so-called requirements contract. Standard Oil of California v. United States, 337 U.S. 293, 297, 300, 69 S.Ct. 1051, 93 L.Ed. 1371. See also United Shoe Machinery Corp. v. United States, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708; I. B. M. Corp. v. United States, 298 U.S.

131, 56 S.Ct. 701, 80 L.Ed. 1085; International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20, and Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653; Fashion Originators Guild v. F. T. C., 312 U.S. 457, 668, 61 S.Ct. 703, 85 L.Ed. 949. Analysis of this complaint shows that the so-called tying-in contract is involved here. The complaint is based upon the premise that defendants have loaned or agreed to loan money upon the condition that the mortgagor would allow the defendants to procure and write the hazard insurance on the property.

The initial question presented, therefore, on this motion is whether a loan of money secured by a real estate mortgage constitutes a lease or a sale or a contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities within the scope of Section 3 of the Clayton Act. Obviously, only a transaction of the particular kind and type referred to in the Act constitutes a violation thereof.

It is difficult to conceive of a transaction for a loan of money as being a lease, sale, or contract for sale of a commodity. Certainly, the loan is not a sale in the usual business sense. A sale is an absolute transfer of property or something of value for a consideration from the seller to the buyer. Alworth-Washburn Co. v. Helvering, Commissioner, 1933, 62 App. D.C. 322, 67 F.2d 694, 696. A loan of money, on the other hand, is an advance of money or credit upon an understanding that an equivalent is to be returned to the lender by the borrower on demand or within a specified time. In the United States money is merely a medium of exchange, not something which is bought and sold in exchange for something else. One does not "sell" money in the usual business sense. Money is used to "purchase" other articles or things. That is, other articles or things are sold in exchange for money. Money is not sold in exchange for other articles or things. Nor is money "leased" in the usual sense of that term. When money is loaned, only its equivalent, not the article or thing loaned, is to be returned.

■ In considering whether the contract between the Curtis Publishing Company and certain distributors of its publications violated Section 3 of the Clayton Act, the Court of Appeals for the Third Circuit held, in Curtis Publishing Company v. Federal Trade Comm., 270 F. 881, at pages 904, 905, that "The words 'lease,' 'sale,' 'contract for sale,' 'lessee,' and 'purchaser,' being the words used, and no other relation than lease and sale being mentioned, there is no express purpose in the clause quoted to make it cover any other subject than leases, sales, or contracts for sale, and to embrace no other persons than lessees and purchasers. The words are so clear they require no construction * * *."

And in affirming this decision the Supreme Court said, 260 U.S. 568, at page 581, 43 S.Ct. 210, at page 213, 67 L.Ed. 408, "Judged by its terms, we think this contract is one of agency, not of sale upon condition, and the record reveals no surrounding circumstances sufficient to give it a different character. This, of course, disposes of the charges under the Clayton Act."

In these decisions the court determined the meaning of the term "sale" according to the usual business sense, not under any specialized definition which the Act fails to provide. That such an approach must be taken and such a meaning assigned to the term "lease" also, would follow from these decisions. For the two terms are found in the same phrase, and therefore must be interpreted consistently. One of the terms should not be given its natural meaning and the other a special meaning unless the statute so requires. It is significant in the instant case that in the Curtis Publishing Company case the Court of Appeals pointed out, at page 907 of 270 F., that one of the reasons which justified the conclusion that an agency relationship, not a buyer-seller relationship existed, was that the nature of the transaction there did *not* involve the "handling of commodities of which sales would naturally be made." That money is not a substance of which sales would naturally be made seems self-evident.

■ Money, which is the only thing involved in the so-called lease, sale, or contract for sale here, is not a commodity, goods, ware, merchandise, machinery, or supply within the meaning of Section 3 of the Clayton Act. Although the phrase "other commodities" appears at the end of the phrase "goods, wares, merchandise, machinery, supplies," the rule of *ejusdem generis* requires that it be confined to articles of the same kind, class, and character as those specifically enumerated. The terms "goods, wares, merchandise, machinery, supplies," were undoubtedly used in their ordinary sense by the framers of the Act. For otherwise they would not be "commodities of which sales would naturally be made." Whether a "sale" or "lease" was made and whether the subject of that sale or lease therefore was a "commodity" within the meaning of the Clayton Act are necessarily related and the terms must be interpreted in light of each other. "Commodities" therefore must be given its usual and natural meaning. That meaning does not include money which, as noted above, is a medium of exchange.

■ Reference may be made to the report of the House Judiciary Committee, which made the following comment concerning the effect of Section 3, "It prohibits the exclusive or 'tying contract' made between the manufacturer and the dealer by purchase or lease whereby the latter agrees, as a condition of his contract, not to use or deal in the commodities of the competitor or rival of the seller or lessor. It is designed merely to prevent this unfair trade practice * * * which is generally regarded by everyone who has given the subject any serious consideration as unjust to the local dealer and to the community as monopolistic in its effects."

That Congress was attempting to curb the so-called tying contract made by vendors of goods when they were sold to dealers or others upon the express provision that the purchaser would not handle any one else's goods, seems evident from the history of the legislation. And no good reason is suggested why the Court should distort the usual, accepted meaning of the language used in the Act in order to bring within the purview of this section an article which may be in trade or in commerce, but has

never been considered as a commodity as that term is used normally. That some items of commerce may not be "goods", "commodities", etc., in the ordinary sense of these terms seems self-evident. If Congress had desired synonymy between "commodities" and "commerce", it could have so indicated. Congress has not indicated such an intent by its language in Section 3 of the Clayton Act. On the contrary, it has specifically required that before the lease or sale of goods and other commodities could be subjected to Section 3, the seller or lessor must be engaged in commerce and that the lease or sale of the goods and commodities must be made in the course of commerce. Such a requirement would become surplusage if the bare terms "goods, wares, merchandise, * * * or other commodities" were intended to be the equivalent of articles in commerce. That the broad terms and constructions of the Sherman Act cannot be transplanted automatically into Section 3 of the Clayton Act is evident. As Justice Frankfurter pointed out in Standard Oil Co. of California v. United States, 337 U.S. 293, at page 297, 69 S.Ct. 1051, 93 L.Ed. 1371 Section 3 of the Clayton Act is a "narrower Act" than the Sherman Act. Each Act must be interpreted in light of its own provisions. Although the Clayton Act may be supplementary to the Sherman Act, it is not co-extensive with it.

Although a loan of money might constitute commerce or may be an article of commerce or may be subject to commerce under the Sherman Act in given situations, we are dealing here with the question of whether money is a commodity as that term is used in the Clayton Act. No ambiguity appears. To resort to some strained and unrealistic interpretation of the language used lacks persuasive support.

In view of these premises, therefore, it follows that no sale or lease exists here within the meaning of Section 3 of the Clayton Act, and the loaning of money is not a sale, leasing, or contract for sale of "goods, wares, merchandise, machinery, supplies, or other commodities" within the meaning of Section 3 of the Clayton Act. Because this conclusion requires that de-

fendants' motion to strike be granted, no decision or views need be expressed concerning the other issues raised by the motion.

Defendants' motion to strike is granted. It is so ordered.

An exception is reserved to the plaintiff.