**SATELLITE T ASSOCIATE**

v.

**CONTINENTAL CABLEVISION OF VIRGINIA, INC., et al.**

**Civ. A. No. 80–0681–R.**

United States District Court, E.D. Virginia, Richmond Division.

March 5, 1982.

974

Jack W. Burtch, Jr., Patrick M. McSweeney, McSweeney, Stutts & Burtch, Richmond, Va., Dudley H. Chapman, Keith I. Clearwaters, Chapman & Clearwaters, Washington, D.C., for plaintiff.

Charles F. Witthoefft, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., Martin Michaelson, Gary L. Christensen,

Robert J. Kenney, Jr., Hogan & Hartson, Washington, D.C., for defendants.

## MEMORANDUM

WARRINER, District Judge.

On 15 June 1981, plaintiff STAR filed an amended complaint in this antitrust action. Defendants move to dismiss portions of the amended complaint on the grounds (1) that plaintiff has failed to state a claim under Clayton Act § 3, 15 U.S.C. § 14 and (2) that the damage allegations of ¶ 28(d) are without legal basis. Defendants additionally move to dismiss on the ground that STAR is not the proper plaintiff in the case.

## I.

Plaintiff alleges that "defendants have maintained a consistent policy to exclude plaintiff from the sale of pay television services to apartment units..." in violation of § 3 of the Clayton Act, 15 U.S.C. § 14. Defendants argue that § 14 is confined by its language to transactions involving "wares, merchandise, machinery, supplies or other commodities," and is inapplicable to the sale of services. Therefore, defendants move to dismiss the § 14 claim on the ground that plaintiff has failed to state a claim thereunder. Plaintiff argues that although a service is involved, the transaction essentially constitutes the sale of a commodity within the ambit of § 14.

■ There is ample authority that § 14 does not encompass the sale of services. *Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co.,* 510 F.2d 1140, 1145 (2d Cir.1975); *Advance Business Systems & Supply Co. v. SCM Corp.,* 415 F.2d 55, 64 (4th Cir.1969); *Columbia Broadcasting System, Inc. v. Amana Refrigeration Inc.,* 295 F.2d 375, 378 (7th Cir.1961). The question presented, therefore, is whether what defendants provide is more in the nature of a service or a commodity.

■ Because the term "commodity" is not defined in the Act, the Courts have been required to interpret the term.[1] The word is to be given its usual and natural meaning, *United States v. Investors Diversified Services,* 102 F.Supp. 645, 648 (D.Minn.1951), and is to be evaluated in the context in which it appears—"goods, wares, merchandise, machinery, supplies or other commodities." 15 U.S.C. § 14. *Columbia Broadcasting System, Inc. v. Amana Refrigeration, Inc.,* 295 F.2d 375, 378 (7th Cir.1961). Thus, a commodity is some type of tangible property that may be leased or sold.

■ Plaintiff argues that the commodity requirement is satisfied because defendants employ and install tangible machinery and equipment to transmit an electronic impulse which is itself a commodity. Plaintiff urges the Court to hold that there are two clear elements of tangibility in the operation of a cable television system: the cable network itself, including the physical attachment to buildings; and the signal which it transmits.

In support of the argument that the electronic impulse is a commodity, plaintiff relies on the holding of *City of Gainesville v. Florida Power & Light Co.,* 488 F.Supp. 1258, 1283 (S.D.Fla.1980), that electricity is a commodity within the terms of the Clayton Act. Defendants cite the holding of *City of Newark v. Delmarva Power & Light Co.,* 467 F.Supp. 763, 774 (D.Del. 1979), that electricity is not a commodity. If the Delaware decision is correct, plaintiff's argument on this point clearly fails. But even if the Florida decision is correct, it does not support plaintiff's position because *City of Gainesville* is significantly distinguishable from the case at bar. In *City of Gainesville,* the Court was concerned with the sale of electricity, *per se,* as a source of power similar to coal or gas.

---

1. Both § 13 and § 14 refer to commodity in the same sense of the word. *Baum v. Investors Diversified Services, Inc.,* 409 F.2d 872, 875 (7th Cir.1969); *City of Gainesville v. Florida Power and Light Co.,* 488 F.Supp. 1258, 1280 (S.D.Fla. 1980). Thus, a decision defining "commodity" under § 13 is also authority for determining what is a commodity under § 14.

Defendants here admittedly are not in the business of selling electricity, or electronic impulses, and the cases holding or assuming that the sale of electricity is the sale of a commodity are not on point.

Plaintiff's second argument to support its position is that the tangible machinery and equipment employed in the cable system constitute commodities and that the tangibility of the delivery mechanism can bring a business based on a service within the ambit of § 14. To determine whether a business involves the sale of a service or of a commodity, courts employ the "dominant nature of the transaction" test:

> Virtually no transfer of an intangible in the nature of a service, right, or privilege can be accomplished without the incidental involvement of tangibles, and we conclude that in such circumstances the dominant nature of the transaction must control in determining whether it falls within the provisions of the Act.

*Tri-State Broadcasting Co. v. United Press International, Inc.,* 369 F.2d 268, 270 (5th Cir.1966).

In applying the dominant nature of the transaction analysis, courts look at the business as a whole. In *General Shale Products Corp. v. Struck Construction Corp.,* 132 F.2d 425 (6th Cir.1942), cert. denied, 318 U.S. 780, 63 S.Ct. 857, 87 L.Ed. 1148 (1943), defendant contracted to construct housing facilities for the city, with defendant also providing the brick for the houses. The total price for the project was flexible, depending on the price of the brick. The Court held that, although the sale of brick to the city was included in the contract, the city did not contract to purchase the bricks but rather for the construction of the houses. Thus, the transaction was essentially a service contract. Id. at 428.

In *Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co.,* 510 F.2d 1140, 1145 (2d Cir.1975), the Court held that insulation subcontractors provided primarily a service, and that the insulation materials used in providing the service are merely incidental to this principal function. Likewise, in *Aviation Specialties, Inc. v. United Technologies Corp.,* 568 F.2d 1186 (5th Cir.1978), the Court held that an agreement to repair engines for the value of labor plus the cost of parts was essentially the sale of a service, although the cost of parts sometimes exceeded the labor charge. Finally, in *Kennedy Theater Ticket Service v. Ticketron, Inc.,* 342 F.Supp. 922 (E.D.Pa.1972), the Court held that an admission ticket to an entertainment event is merely incidental to the sale of the intangible right to attend the event.[2]

The aim of the analysis in these cases is not simply to separate a business into its tangible and intangible components to determine its nature. Rather, the analysis presents a search for the essential element of the transaction as opposed to the incidental elements. In *General Shale Products Corp.,* the defendant was in the business of building houses; in *Hudson Valley,* the defendant was in the business of insulating pipes; in *Aviation Specialties,* the defendant was in the business of repairing engines. Here, as in *Kennedy Theater,* the defendants are in the business of providing an entertainment service. The equipment and machinery necessary to provide cable television is merely incidental to providing the entertainment service. The subscriber contracts for this intangible service, not for the tangible equipment required to receive the service. If he could have the service without the equipment he would be just as happy—or happier. Accordingly, the claim under § 14 in the Amended Complaint is DISMISSED on the ground that the Clayton Act, § 3 does not reach a service and it is essentially a service which is the subject of the § 3 claim asserted in this suit.

## II.

■ Defendants additionally move to dismiss certain damage claims asserted on the

---

**2.** Not mentioned were the seats, stage, arch, curtain, lights, props, and the like which were necessary to present the entertainment service but were essentially incidental to the service provided by Ticketron, Inc.

ground that plaintiff's expanded damage theory in the amended complaint is without legal basis. According to the amended complaint, plaintiff corporation, Satellite Television & Associated Resources (STAR), was organized to develop and operate a pay television system using microwave rather than cable. A wholly owned subsidiary of STAR, Richmond Subscription Television, Inc., (RST, Inc.) formed a limited partnership in Richmond, (RST, Ltd.) to raise funds for a Richmond pay television system. Similar entities were formed in several other cities. In September 1980, STAR alleges that it "consolidated" all of its local limited partnerships into STAR, with STAR acquiring the assets of RST, Ltd. in exchange for the stock of STAR. The amended complaint substitutes STAR for the original plaintiff RST, Ltd. Plaintiff STAR alleges at paragraph 28(d) of the amended complaint:

> The foreclosure of a substantial portion of the apartment building market to plaintiff in Richmond had a material and foreseeable adverse effect on the building of its subscriber base, and thereby adversely affected plaintiff's ability to develop its business and to obtain financing for similar ventures in other cities, including Louisville, Kentucky; Birmingham, Alabama; Norfolk, Virginia; Pensacola, Florida; Tallahassee, Florida; Mobile, Alabama; Roanoke, Virginia; Boise, Idaho. Said foreclosure further led to suspension or abandonment of similar ventures involving lost investment and the opportunity to earn profits in the following additional cities: Colorado Springs, Colorado; Albuquerque, New Mexico; Montgomery, Alabama.

Plaintiff seeks to recover for these losses.

In *Hawaii v. Standard Oil Company of California*, 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 891 n. 14, 31 L.Ed.2d 184 (1972), the Supreme Court stated: "The lower courts have been virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." The Supreme Court cites *South Carolina Council of Milk Producers, Inc. v. Newton*, 360 F.2d 414 (4th Cir.1966), as one of the examples in support of this statement.

In *South Carolina Council*, the Fourth Circuit provided guidelines for determining compensable injury under the antitrust acts:

> The pivot of decisions presently is whether the defendants' asserted conduct was the proximate cause of the plaintiffs' asserted injury. If the damage was merely incidental or consequential, or if the defendants' antitrust acts are so removed from the injury as to be only remotely causative, the plaintiffs have not been injured "by reason of anything forbidden in the antitrust laws" as contemplated by the Clayton Act.

*South Carolina Council of Milk Producers, Inc. v. Newton*, 360 F.2d at 419. This language was recently quoted by the Fourth Circuit in *Ratliff v. Burney*, 657 F.2d 640 (4th Cir.1981), affirming a dismissal for failure to establish standing. In *Ratliff*, plaintiff alleged that a boycott by doctors of a county hospital resulted in loss of revenue to the county, a loss that plaintiff as taxpayer would ultimately bear. The Court held that not only was the plaintiff too far removed from the alleged violation, but also the alleged injury was too tenuous and remote. *Ratliff v. Burney*, 657 F.2d at 642.[3]

The injury asserted in the amended complaint here is too tenuous and remote. No accumulation of facts in the instant case could show an entitlement by plaintiff to recover damages from defendant on account of plaintiff's alleged inability to develop a market for its services in locations other than Richmond. Such losses are so removed geographically, corporately, financially, and competitively from the Rich-

---

**3.** In *South Carolina* the district court was reversed for not permitting the jury to determine the causal connection at a trial. In *Ratliff*, on authority of South Carolina, the district court was upheld in its decision that the causal connection, in that case, should be determined as a matter of law on a motion to dismiss.

mond market that to give credence to the claim for damages by permitting a jury trial on the issue would make the antitrust laws look foolish. Further, if the motion to dismiss this claim for damages be denied, despite the legal inability of recovery, both parties must engage in extensive discovery regarding the eleven cities beyond Richmond, at tremendous expense and to no avail. The discovery and the trial would be expanded eleven times over to no benefit.

We are here faced with a pure question of the reach of the antitrust law. The Court assumes, for the purpose of the motion, that defendants' exclusive contracts were anticompetitive and hindered plaintiff's efforts to exploit the Richmond market. Proof of this predicate would not entitle plaintiff to damages for plaintiff's unsuccessful efforts to exploit other markets. These other eleven markets are clearly not within the target area, *i.e.*, "the sector of the economy in which the violation threatened a breakdown of competitive conditions." *South Carolina Council of Milk Producers, Inc. v. Newton*, 360 F.2d at 418. Thus, the motion to dismiss the claim for damages to plaintiff's ventures in other cities is GRANTED.

### III.

■ Defendant finally moves to dismiss the complaint on the ground that STAR is not the proper plaintiff because STAR has alleged insufficient facts to establish that it has the authority to assert RST's claims. To the contrary, the Court finds that there is sufficient allegation of this authority. It may well be that the facts as developed may not show this authority, especially with respect to the claims of limited partners. But the allegations of authority and the allegations of the right to assert the claim are sufficient. Accordingly, the motion to dismiss on this ground will be denied.

An appropriate order shall issue.