**BLOUNT FINANCIAL SERVICES, INC., et al., Plaintiffs,**

v.

**WALTER E. HELLER & COMPANY, et al., Defendants.**

**Civ. No. 3–85–679.**

United States District Court, E.D. Tennessee, N.D.

Feb. 25, 1986.

Philip R. Russ, Amarillo, Tex., James D. Fox, Alcoa, Tenn., for plaintiffs.

L. Caesar Stair, III, Knoxville, Tenn., Rene A. Torrado, Jr., Daniel A. Edelman, Chicago, Ill., for Walter E. Heller & Co.

Morris W. Kizer, Frantz, McConnell & Seymour, Knoxville, Tenn., for Lowell Crabtree.

## MEMORANDUM

JARVIS, District Judge.

This case came before the Court on December 3, 1985, for an oral hearing on defendants' motions to dismiss. Plaintiff was granted additional time to file an amended complaint to "specify with particularity those alleged facts relating to plaintiff's RICO, antitrust, fraud, and fiduciary duty claims." [Doc. 14]. Plaintiffs file an amended complaint [Doc. 15] and defendants renew their motions to dismiss. [Docs. 16, 17, 18].

Plaintiffs, David and Jean Aultom, BFS Finance, Inc. and Blount Financial Services, Inc. [BFS] operated as an industrial loan and thrift company in Maryville, Tennessee. After several years of operation, BFS and defendant Walter E. Heller & Company [Heller] entered a Re-Discount Financing Security Agreement on or about April 24, 1973. [Doc. 15, ¶¶ 12–13]. Heller agreed to make loans and advances to BFS against receivables. The Re-Discount Financing Security Agreement was amended on August 15, 1973; January 15, 1976; February 4, 1981; May 1, 1981; January 25, 1982. Heller was to make available operating capital for BFS in return for payments of interest in excess of the existing prime rate and Heller's assignment of consumer loans and related collateral. Under the Agreement, BFS was wholly dependent upon Heller for credit, but BFS could terminate the agreement on 60-days notice. From 1978 to 1982, Heller required increasingly burdensome actions by BFS to assure the flow of credit. This included increasing the number of open offices, approval of operating budgets by BFS, and sales of BFS' most valuable assets.

In June, 1982, defendant Crabtree was an officer of BFS. Heller and Crabtree conspired to assure that BFS would not timely file projections and reports required for the continuation of the Re-Discount Financing Agreement. Upon the default of BFS, Heller attached all of the receivables of BFS. The amended complaint alleges, "Heller and Crabtree further conspired during said period of time to set up a new business entitled Mountain Credit, Inc. ("Mountain") .... The assets of BFS were transferred to Mountain and Crabtree became the chief executive officer thereof." [Doc. 15, ¶ 32]. There is no allegation that Heller has any ownership interest in Mountain.

Defendants move to dismiss the federal antitrust and RICO claims as well as the state law fraud and personal injury claims. [Docs. 16, 17]. Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and movant is entitled to judgment as a matter of law; a court cannot make findings of disputed facts and must construe evidence together with all inferences to be drawn therefrom in a light most favorable to the party opposing the motion. Fed.R.Civ.P. 56; *Quillen v. U.S. Postal Service*, 564 F.Supp. 314 (D.C.Mich.1983).

### I. Antitrust Claims

Plaintiff alleges violations of § 4 of the Clayton Act [15 U.S.C. § 15], violations of §§ 1 and 2 of the Sherman Act [15 U.S.C. §§ 1, 2], and § 2 of the Clayton Act, also

known as the Robinson-Patman Act [15 U.S.C. § 13]. [Doc. 15, ¶ 5]. Section 4 of the Clayton Act provides a private cause of action for "any person who shall be injured in his business or property by reasons of anything forbidden in the antitrust laws". 15 U.S.C. § 15. Section 4 of the Clayton Act does not state a cause of action in and of itself.

■ Section 1 of the Sherman Act makes illegal any conspiracy in restraint of trade: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To state a cause of action under § 1 of the Sherman Act, a plaintiff must establish (1) a combination or agreement between two or more persons or business entities to commit an unlawful act or to accomplish a lawful objective through unlawful means, (2) an intent to injure the plaintiff, (3) an absence of justification for the defendants' agreement in restraint of trade. *Robinson v. Magovern*, 521 F.Supp. 842, 926 (W.D. Pa.1981). Plaintiff fails to state a cause of action with regard to the second element of anti-competitive intent. There is no allegation that Heller has an ownership interest in the corporation which replaced plaintiff. Heller was not a competitor of BFS. Even if Heller did conspire to replace BFS with another competitor, there is no allegation that Heller thereby improved Heller's position vis-a-vis other suppliers of credit. The facts as alleged do not suggest an intent by Heller to affect competition within the consumer loan industry in eastern Tennessee. There is no lessening of competition among those institutions directly offering consumer loans to the public. One competitor, BFS, was merely replaced by another, Mountain. The antitrust laws protect competition not competitors. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Plaintiff fails to state a cause of action with regard to § 1 of the Sherman Act.

■ Section 2 of the Sherman Act provides, "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States or with foreign nations, shall be deemed guilty of a felony." 15 U.S.C. § 2. Section 2 of the Sherman Act can be regarded as supplementing § 1. Section 1 forbids particular categories of agreements because of their known tendency to produce the evils of monopoly, while § 2 outlaws any practice or arrangement, including those which might ordinarily be unobjectionable in themselves, if engaged in with the required unlawful purpose to monopolize. *Standard Oil Co. v. United States*, 221 U.S. 1, 60–62, 31 S.Ct. 502, 515–16, 55 L.Ed. 619 (1911); *Antitrust* 12 (L. Schwartz ed. 1983). The facts as alleged by plaintiff do not allow any reasonable inference that Heller's intent was to monopolize either at the level of suppliers of credit such as Heller or at the level of providers of consumer loans directly to the public such as BFS. Plaintiff has failed to state a cause of action under § 2 of the Sherman Act.

■ Section 2 of the Clayton Act, also known as the Robinson-Patman Act, provides:

> It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality . . . where such commodities are sold for use, consumption, or resale within the United States . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination.

15 U.S.C. § 13. Although plaintiff conceded at the oral hearing held December 3, 1985 that he had no claim under the Robinson-Patman Act because the credit extended by Heller to BFS was not a commodity as defined by the Act, plaintiff again asserts this cause of action in ¶ 5 of the amended complaint. "Commodity" within

the meaning of this section is restricted to products, merchandise or other tangible goods. *National Tire Wholesale, Inc. v. Washington Post Co.*, 441 F.Supp. 81, 84–85 (D.C.Cir.1977) (Newspaper advertising was not a commodity within the meaning of the Act. Even though printed paper is a tangible vehicle for the conveyance of ideas, the dominant nature of the transaction involves an intangible.). Plaintiff cited *Fortner Enterprises v. U.S. Steel*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1968), for the proposition that credit may be a commodity within the meaning of the Robinson-Patman Act. [Doc. 10 at 14]. However, *Fortner* involved only §§ 1 and 2 of the Sherman Act and allegations that credit was illegally tied to the purchase of a tangible product, a prefabricated house. This Court finds plaintiff is bound by his earlier representation to this Court that he had no claim under Robinson-Patman and in the alternative finds that plaintiff has failed to state a cause of action regarding a commodity as defined by the Act.

## II. RICO Violations

The amended complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act [RICO] under § 1962(a), (b), (c). [Doc. 15, ¶¶ 38–41].

■ The technically correct statute for plaintiffs' cause of action is 18 U.S.C. § 1964(c), which provides a private cause of action for "any person injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1964. Plaintiff must show: (1) a violation of § 1962, (2) direct injury to plaintiffs from such a violation, (3) damages sustained by plaintiffs. *Wilcox Development Co. v. First Interstate Bank of Oregon*, 97 F.R.D. 440 (D.C. Or.1983).

Section 1962(a) provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acqui-

sition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). The racketeering activity alleged involves "acts and offenses which involves fraud, attempts to obtain money and property by false pretenses, attempts to collect an unlawful debt(s), the charging of usurious rates of interest, the breach of fiduciary duties owed by Heller and Crabtree to BFS and Aultom and others who have borrowed funds from Heller and of threats of economic coersion if BFS and others did not acceed to the unlawful demands of Heller in concert with its co-conspirator Crabtree." [Doc. 15, ¶ 38].

■ RICO defines "racketeering activity" in 18 U.S.C. § 1961(1) by reference to specifically enumerated statutory criminal offenses. The only factual allegations which may fit within the definition of "racketeering activity" are the collection of an unlawful debt and mail fraud.

RICO defines "unlawful debt" as:

A debt (A) incurred or contracted in gambling activity ... or which is unenforceable under state or federal law in whole or in part as to principal or interest because of the laws relating to usury and (B) which was incurred in connection with the business of gambling ... or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6). Plaintiffs' allegation that it was charged usurious rates is merely conclusory. Plaintiff does not specify the rates charged or the applicable usury statute. Defendants maintain that the Re-Discount Financing Security Agreement [Doc. 1, Exh. A, ¶ 9(c) ] was to be governed by Illinois law. [Doc. 5 at 15]. Defendants maintain that the contractual choice of law is valid under Tennessee law and that Illinois law permitted a lender to charge any rate of interest on loans made to corporations under Ill.Ann.Stat., ch. 74, § 4(1)(a). *Id.; cf. Smith v. Grundy County Nation-*

*al Bank,* No. 84–C–9719, slip op. (N.D.Ill. July 17, 1985) [Available on WESTLAW, DCTU database] (Bank was not charging a usurious interest rate under Illinois law).

 Plaintiffs also fail to state a cause of action for mail fraud under 18 U.S.C. § 1341. The essential elements of mail fraud are that defendant devised a scheme or artifice to defraud, use the mails, and either sent or received mail connected with the scheme. *U.S. v. Dreer,* 457 F.2d 31 (3rd Cir.1972). Plaintiffs have not alleged facts sufficient to state a cause of action for a fraudulent scheme. Even if Heller made representations about providing future credit which Heller eventually did not fulfill, plaintiffs have not alleged that such misrepresentations were intentional or with the intent to defraud.

Plaintiffs have failed to state a cause of action under §§ 1962(a), (b), (c) because the complaint and amended complaint fail to state a pattern of racketeering activity. Defendants' motions to dismiss the RICO claims are hereby GRANTED.

III. Conclusion

Plaintiffs have failed to state a cognizable federal claim under the antitrust or RICO statutes. Defendants' motions for summary judgment regarding the federal claims are hereby GRANTED. The state-law claims are hereby DISMISSED for lack of an independent basis for federal jurisdiction. This case is hereby CLOSED.

Order accordingly.