RANKIN COUNTY
CABLEVISION, Plaintiff,

v.

PEARL RIVER VALLEY WATER
SUPPLY DISTRICT, et al.,
Defendants.

TRU VISION, INC., Counterplaintiff,

v.

RANKIN COUNTY CABLEVISION, et al., Counterdefendants.

Civ. A. No. J87–0428(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 20, 1988.

Alan W. Perry, Fred Krutz, III, Jackson, Miss., for Tru Vision.

William F. Goodman, Jr., Paul H. Stephenson, III, Jackson, Miss., Robert D. Joffe, Marc J. Apfelbaum, Rosemary Q. Barry (pro hac vice), James E. Fleming, Cravath, Swaine & Moore, New York City, Terry R. Levy, Larry D. Moffett, Jackson, Miss., for AT & C.

Neil P. Olack, Neville H. Boschert, Jackson, Miss., for Pearl River Valley Water Supply Dist.

MEMORANDUM OPINION
AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of counterdefendant American Television and Communication (ATC) to dismiss counts III and IV of the amended counterclaim by counterplaintiff Tru Vision, Inc., pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Tru Vision timely responded to the motion and the court has considered the memoranda of authorities submitted by the parties.

This is an action between two providers of cable television service to persons in parts of central Mississippi, including areas in Jackson, Ridgeland and Madison. The territories they cover are not co-extensive

in that there are areas, and in particular the City of Jackson, served by ATC but not by Tru Vision. In this action, Tru Vision has alleged antitrust violations by charging that ATC has engaged in various monopolistic conduct. Count III of the amended counterclaim alleges price discrimination in the provision of cable television service in violation of section 2(a) of the Clayton Act, as amended by the Robinson–Patman Act, 15 U.S.C. § 13(a).[1] Specifically, Tru Vision avers that ATC is charging higher rates for providing cable television in Jackson, where ATC has no competition, than it does in Ridgeland and Madison, where Tru Vision competes with ATC, and further, that ATC is purchasing cable television programming from cable program suppliers for lower prices than those paid by Tru Vision. Count IV alleges the existence of restrictive agreements involving ATC's provision of cable television programming in violation of section 3 of the Clayton Act, 15 U.S.C. § 14,[2] in that ATC is unlawfully monopolizing and attempting to monopolize the cable television market through long-term subscription agreements which grant signing ATC subscribers a lower price than ATC's regular price, but which provide for a "penalty" or "forfeiture" of a "subscription deposit" if a subscriber switches to Tru Vision. According to ATC, sections 2 and 3 of the Clayton Act apply only to the transactions involving tangible commodities and not to intangibles such as the providing of cable television programs, and that Tru Vision has therefore failed to state a claim upon which relief may be granted.

Section 2(a) of the Clayton Act, as amended, deals only with "commodities of like grade or quality," and section 3 likewise addresses only transactions involving commodities. The term "commodity" has been defined as "an article of trade or commerce" and "especially a product as distinguished from a service." *Baum v. Investors Diversified Services, Inc.,* 409

F.2d 872, 874 (7th Cir.1969). Thus, the term commodity, as used in the Act, is restricted to "products, merchandise or other tangible goods." *Id.* Transactions involving services not within the scope of the Act. *See Blount Financial Services v. Walter E. Heller & Co.,* 632 F.Supp. 240 (E.D.Tenn.1986), *aff'd,* 819 F.2d 151 (6th Cir.1987) ("commodities" restricted to products, merchandise or tangible goods). It is ATC's position that the provision of cable television is not a commodity within the meaning of the sections of the Act prohibiting price discrimination and exclusive dealing, and that the counts charging such violations must therefore be dismissed.

■ Because a transaction may involve tangible items but at the same time have intangible aspects, the court must consider the *essence* of the transaction to determine whether or not it may be said to come within the purview of the Act. As the Fifth Circuit has recognized,

[v]irtually no transfer of an intangible in the nature of a service, right, or privilege can be accomplished without the incidental involvement of tangibles and ... in such circumstances *the dominant nature of the transaction must control in determining whether it falls within the provisions of the [Robinson–Patman] Act.*

*Tri–State Broadcasting Co. v. United Press International, Inc.,* 369 F.2d 268, 270 (5th Cir.1966), *quoted in Aviation Specialties, Inc. v. United Technologies Corp.,* 568 F.2d 1186, 1191 (5th Cir.1978).

■ The parties agree that cable television is ultimately used to produce visual images and sound for a consumer, both of which appear at least facially to be intangible. ATC urges that while cable television service involves the delivery of television signals to subscribers through overhead wires or underground cables, and hence various hardware and equipment is necessary to transmit those signals, the domi-

---

1. Section 2(a) makes it "unlawful for any person engaged in commerce ... to discriminate in price between different purchasers of commodities of like grade and quality." 15 U.S.C. § 13(a).

2. Section 3 of the Act covers the lease or sale of "goods, wares, merchandise, machinery, supplies, or other commodities." 15 U.S.C. § 14.

nant feature of cable television service is the provision of entertainment. Subscribers, it contends, choose to subscribe to the service because it provides them with greater channel selection and hence a broader range of viewing choices from which they can "amuse or educate themselves." That is, their purpose in paying is not to purchase the signals that are transmitted but to receive the higher quality reception gained through transmission of the signals, including greater channel selection.

Tru Vision asserts that the appropriate analysis to be applied in this case is provided by the several courts which have considered whether electricity is a commodity within the Act's price discrimination provisions. Most of the courts which have considered tht issue have concluded that electricity is a commodity subject to the Act. *See Town of Concord v. Boston Edison Co.,* 676 F.Supp. 396, 397 (D.Mass.1988); *City of Kirkwood v. Union Electric Co.,* 671 F.2d 1173, 1181 (8th Cir.1982). The court is not persuaded by this analogy and would note that while the majority of courts have concluded that electricity is a commodity, there are those which have held to the contrary. *See City of Newark v. Delmarva Power & Light Co.,* 467 F.Supp. 763, 773 (D.Del.1979). Moreover, of the courts which have had an opportunity to consider the precise issue presented in the case at bar, both have reached the conclusion that the provision of cable television is not a commodity within the scope of the Robinson–Patman Act. This was the result reached in *H.R.M., Inc. v. Tele-Communications, Inc.,* 653 F.Supp. 645 (D.Colo.1987), with little discussion. In *Satellite T Associate v. Continental Cablevision of Virginia, Inc.,* 586 F.Supp. 973 (E.D.Va.1982), *aff'd,* 714 F.2d 351 (4th Cir. 1983), the court rejected the defendant's argument that the commodity requirement was satisfied because the defendant employed and installed tangible machinery and equipment to transmit an electronic impulse, *i.e.,* the signal, which was itself a commodity, much like electricity, and instead concluded that

[t]he equipment and machinery necessary to provide cable television is merely incidental to providing the entertainment service. The subscriber contracts for this intangible service, not for the tangible equipment required to receive the service. If he could have the service without the equipment he would be just as happy—or happier. Accordingly, the claim under § 14 ... is dismissed on the ground that the Clayton Act, § 3 does not reach a service and it is essentially a service which is the subject of the § 3 claim asserted in this suit.

*Satellite T Associate,* 586 F.Supp. at 976. Thus, the court, in applying the dominant nature of the transaction analysis utilized in the Fifth Circuit, concluded that the dominant nature of cable television service is the providing of entertainment, a service. The court is persuaded by the rationale employed by the court in *Satellite T Associate* and agrees with the conclusion reached in that case. *See also Tri–State Broadcasting Co. v. United Press Int'l, Inc.,* 369 F.2d 268, 270 (5th Cir.1966) (contract for sale of news information services held not to constitute sale of a commodity within contemplation of Act); *Columbia Broadcasting Sys., Inc. v. Amana Refrigeration, Inc.,* 295 F.2d 375, 378 (7th Cir. 1961) (violation of Act could not be predicated on theory of discrimination in regard to sale of television broadcast time); *Am. Tel. and Tel. Co. v. Delta Communications Corp.,* 408 F.Supp. 1075, 1114 (S.D. Miss.1976), *aff'd,* 579 F.2d 972 (5th Cir. 1978), *modified on other grounds,* 590 F.2d 100 (5th Cir.1979), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 82 (1979) (holding there was no sale or purchase of any tangible commodity involved where networks purchased service of delivering their program and AT & T sold only the service of transporting the network signals); *National Tire Wholesale, Inc. v. Washington Post Co.,* 441 F.Supp. 81, 85 (D.D.C.1977) (broadcast advertising not a commodity within Robinson–Patman Act).

Accordingly, it is ordered that the motion of ATC to dismiss counts III and IV of the

amended counterclaim is granted and those claims are dismissed with prejudice.