NATIONAL COMMUNICATIONS ASSOCIATION, INC.,
Plaintiff,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY,
Defendant.

No. 92 Civ. 1735 (LAP).

United States District Court,
S.D. New York.

Dec. 21, 1992.

---

Fabricant, Yeskoo & Colangelo, New York City, for plaintiff; by Richard C. Yeskoo.

Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for defendant; by Frederick L. Whitmer.

## OPINION

PRESKA, District Judge.

Defendant, American Telephone and Telegraph Company ("AT & T"), has moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Counts II, III, and IV of the com-

plaint filed by plaintiff, National Communications Association, Inc. ("NCA"). For the reasons set forth below, the motion is granted as to Count IV but denied as to Counts II and III.

## I. BACKGROUND

NCA engages in the business of reselling certain long distance voice telecommunications service which it purchases from AT & T. Compl. ¶ 1. Specifically, NCA operates through "Software Defined Networks" ("SDN"), a class of telecommunications service which, pursuant to tariffs filed by AT & T with the Federal Communications Commission, provides a discount to companies which commit to a minimum monthly usage. *Id.* ¶ 5. AT & T sells telecommunications service under the SDN tariffs both to end-user customers and to resellers such as NCA. *Id.* ¶¶ 6–7.

Resellers such as NCA receive the same discount on service under SDN tariffs as the end-user customers with which AT & T deals directly; the resellers accordingly are not wholesale distributors in the traditional sense. Nevertheless, resellers such as NCA have unearthed a market among companies which cannot meet the minimum monthly usage required to receive service under SDN tariffs directly from AT & T. NCA and other resellers thus enable small companies to purchase long distance voice telecommunications service under SDN tariffs in a cooperative fashion.

Although resellers such as NCA pay AT & T the same price for service as the end-user customers to which AT & T sells directly, NCA alleges that AT & T does not treat the resellers in the same manner it treats its other SDN customers.[1] AT & T allegedly assigns SDN resellers to a different "provisioning" organization than its non-reseller customers, and AT & T provides the resellers' "provisioning" organization with fewer and inferior resources than the non-reseller organization. *Id.*

¶ 10. The effects of this disparate treatment are perceptible in several areas.

NCA alleges that AT & T assigns fewer personnel with inferior skills to service NCA's account relative to the personnel furnished to AT & T's non-reseller customers, and, in the case of marketing support, AT & T provides no service to NCA although AT & T does provide marketing support to its non-reseller customers. *Id.* ¶¶ 11–13, 20. In addition, NCA alleges that AT & T's disparate treatment of NCA is evident from the extra four months AT & T required to initiate NCA's account in comparison to the time AT & T requires to initiate non-reseller customers' accounts; furthermore, AT & T takes five months more to add an additional NCA customer to the SDN than AT & T requires to add a new location for its non-reseller customers. *Id.* ¶¶ 14–15.

Likewise, NCA alleges that AT & T's error rate in processing NCA's orders for new customers "far exceeds" that for AT & T's non-reseller customers and that AT & T in fact had a policy of "discarding or destroying" some customer orders submitted by NCA until NCA demanded receipts for its orders. *Id.* ¶¶ 16, 19. Additionally, NCA alleges that AT & T failed to provide adequate inter-exchange trunks to service NCA's customers, resulting in calls being routed outside SDN, but AT & T has generally provided adequate trunks for non-reseller customers. *Id.* ¶ 17. Finally, NCA alleges that AT & T failed to bill and delayed billing certain NCA customers while AT & T billed non-reseller customers in a more timely manner, and that AT & T has improperly managed accounting related to NCA through practices not applied to AT & T's non-reseller customers. *Id.* ¶¶ 18, 21.

As a result of this alleged treatment, NCA seeks relief against AT & T based on the following causes of action: (1) discrimination under the Communications Act of 1934, 47 U.S.C. § 151 *et seq.;* (2) monopoli-

---

1. For purposes of AT & T's motion to dismiss, the facts alleged in NCA's complaint are taken as true, and all reasonable inferences are drawn in NCA's favor. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Theatre Party Assocs., Inc. v. Shubert Org., Inc.,* 695 F.Supp. 150, 153 (S.D.N.Y.1988).

zation in violation of § 2 of the Sherman Act, 15 U.S.C. § 2; (3) attempted monopolization in violation of § 2 of the Sherman Act; (4) price discrimination in violation of the Robinson–Patman Act, 15 U.S.C. § 13,; and (5) violation of SDN tariffs and federal common law.

With the instant motion, AT & T seeks to dismiss the two monopolization counts and the Robinson–Patman count. AT & T's arguments for dismissal fail as to the monopolization counts but succeed as to the Robinson–Patman count.

## II. THE MONOPOLIZATION CAUSES OF ACTION

The essential elements of a claim of monopolization under § 2 of the Sherman Act are "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).

NCA alleges that AT & T has carried out the discriminatory practices described above in a deliberate effort to discourage the resale of telecommunications service under SDN tariffs. Compl. ¶ 8. NCA contends that AT & T views such resale as diverting certain end-user customers, *i.e.*, NCA's customers, from other AT & T long distance programs such as Pro–WATS and Multi–Location WATS. *Id.* Moreover, NCA alleges that AT & T's share in the long distance voice telecommunications services market is in excess of 70% and that AT & T is monopolizing, or attempting to monopolize, that market through its discriminatory actions against SDN resellers such as NCA. *Id.* ¶¶ 23–35.

■ On their face, these allegations appear to state a claim under § 2 of the Sherman Act as set out in *Grinnell*. NCA alleges that AT & T holds monopoly power in a relevant market and that AT & T willfully seeks to maintain that power. AT & T asserts three arguments contending

that NCA has nonetheless failed to state a claim upon which relief can be granted.

### A. *Claim of Failure to Allege a Plausible Market.*

■ AT & T's first contention is that NCA has failed to allege a plausible economic market for its monopolization claims. The basis for AT & T's argument is that "long distance voice telecommunications services," the relevant market alleged by NCA and apparently one of the two types of long distance services provided by AT & T, fails to include communications services for data transmission. Passing whether the market definition may need to be refined as this action progresses, I find the market definition alleged by NCA to be reasonable.

Although certain data transmission is excluded from NCA's market definition, many common types of data transmission, such as facsimile transmission, are sent through voice telecommunications services and are therefore included in NCA's market definition. In fact, it is unclear whether any of NCA's customers use the data transmission services which AT & T claims are improvidently excluded from NCA's market definition. To paraphrase the concession made by counsel for AT & T during oral argument, this is an area of enormous technical complexity.

Although a market allegation making "no economic sense under any set of facts" will be dismissed on a Rule 12(b)(6) motion, *Theatre Party*, 695 F.Supp. at 154, this is not such a case. Whether data transmission services are interchangeable with voice telecommunications services and, accordingly, should be added to the market definition can only be determined following discovery. At this stage of the proceedings, NCA's market allegation is adequate to defeat AT & T's motion to dismiss.

### B. *Claim of Monopolization of AT & T's Own Product.*

AT & T next contends that the complaint fails to state a cause of action for monopolization because NCA alleges in effect that AT & T has monopolized its own product.

For this proposition, AT & T relies on the well settled principle that a defendant's "monopoly over the distribution of its own product cannot form the basis of a valid monopolization claim." *Theatre Party*, 695 F.Supp. at 155.

■ AT & T's argument fails because a monopolist, or person attempting to monopolize, can be found liable in regard to distribution of its own product if it is (1) illegally attempting to destroy competition by refusing to deal or (2) controlling an essential service or bottleneck. *See MCI Communications Corp. v. American Tel. and Tel. Co.*, 708 F.2d 1081, 1148–49 (7th Cir.) (discussing theories under which denial of multipoint interconnections by AT & T could violate antitrust laws), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983); *American Tel. and Tel. Co. v. North Am. Indus. of New York, Inc.*, 772 F.Supp. 777, 784–86 (S.D.N.Y.1991) ("essential facilities" claim stated where New York Telephone refused to sell its fraud-prevention service to pay telephone competitor).

NCA's complaint states a claim against AT & T under each of these two approaches because, drawing all reasonable inferences in favor of NCA, NCA alleges that AT & T is a monopolist, or is attempting to become a monopolist, in the market of long distance voice telecommunications services and is mishandling the provision of essential services to resellers such as NCA in order that it can further establish its monopoly. Accordingly, NCA's claim is sufficient on this point.

C. *Sufficiency of NCA's Pleading of Facts.*

■ Lastly, AT & T argues that the monopolization counts should be dismissed because NCA has failed to plead facts sufficient to support its claims; according to AT & T, NCA has not alleged injury to competition in the relevant market but merely alleged injury to itself. AT & T's argument is defective in two respects.

First, NCA clearly alleges injury more than to itself. NCA's complaint repeatedly asserts that AT & T's disparate "provision-ing" discriminates against commercial SDN resellers—of which NCA is but one. Compl. ¶¶ 8, 10–11, 26, 31, 33, 38–40. Furthermore, to the extent the allegations specify AT & T's treatment of NCA individually—which the complaint does in substantial detail—it can be reasonably inferred that other SDN resellers also suffer from the same mistreatment by AT & T. *See North Am.*, 772 F.Supp. at 786 (inferring that non-parties also suffer from alleged anticompetitive behavior).

Second and more importantly, NCA explicitly alleges injury to competition in the long distance voice telecommunications services market. Compl. ¶¶ 26–27, 31–33. AT & T contends in turn that NCA's allegations of injury to competition are merely conclusory and in substance speak merely to AT & T's "administrative and bureaucratic" decisions on a micro-management level, which have no effect on the relevant market. Reference to NCA's extensive factual allegations, however, demonstrates that AT & T's argument is without merit.

NCA has alleged broad-based, discriminatory conduct in the manner in which AT & T services its SDN reseller customers relative to its SDN non-reseller customers. NCA well articulates its claim that AT & T provides disparate "provisioning" services to SDN resellers in order to discourage end-user customers from seeking long distance voice telecommunications service through the SDN resellers, as opposed to purchasing AT & T services such as Pro–WATS and Multi–Location WATS. Thus, NCA's allegations of the impact of AT & T's conduct upon competition between long distance voice telecommunications services are adequate to withstand a motion to dismiss.

### III. THE ROBINSON–PATMAN CAUSE OF ACTION

■ Count IV of NCA's complaint alleges price discrimination in violation of the Robinson–Patman Act. The Robinson–Patman Act makes it " ... unlawful for any person engaged in commerce ... to discriminate in price between different purchasers of commodities of like grade and

quality...." 15 U.S.C. § 13(a). Recognizing that the Robinson–Patman Act applies only to "commodities," NCA alleges that long distance voice telecommunications services are commodities, Compl. ¶ 37, but AT & T correctly points out that they are instead services, to which the Robinson–Patman Act does not apply.

Several cases have considered the range of "commodities" under the Robinson–Patman Act and have distinguished commodities from intangible goods and services. *See, e.g., First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033, 1035–38 (7th Cir.1989) (printing of comic books is service), *cert. denied*, 493 U.S. 1075, 110 S.Ct. 1123, 107 L.Ed.2d 1030 (1990); *Ambook Enters. v. Time Inc.*, 612 F.2d 604, 609–10 (2d Cir.1979) (newspaper advertising is not commodity), *cert. denied*, 448 U.S. 914, 101 S.Ct. 35, 65 L.Ed.2d 1179 (1980); *Rankin County Cablevision v. Pearl River Valley Water Supply Dist.*, 692 F.Supp. 691, 692–93 (S.D.Miss.1988) (cable television service is not commodity). One court has even held that telecommunications services, in the case of AT & T's transmission of television network signals, are not commodities under the Robinson–Patman Act. *American Tel. and Tel. Co. v. Delta Communications Corp.*, 408 F.Supp. 1075, 1114 (S.D.Miss.1976), *aff'd per curiam*, 579 F.2d 972 (5th Cir.1978), *cert. denied*, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979).

In view of these precedents, I find as a matter of law that the long distance voice telecommunications services at issue in this action do not constitute "commodities" under the Robinson–Patman Act.[2] Accordingly, Count IV of the complaint is dismissed.

## IV. CONCLUSION

AT & T's motion to dismiss is granted as to Count IV but denied as to Counts II and III.

SO ORDERED.

---

**2.** NCA urges the Court to analogize long distance voice telecommunications services to electricity, which some courts have found the Robinson–Patman Act to encompass. That comparison is inappropriate because the electricity cases, similar to other cases analyzing commodities under the Robinson–Patman Act, recognize that commodities are tangible; telecommunications services, in my view, are not tangible. *See, e.g., City of Kirkwood v. Union Elec. Co.*, 671 F.2d 1173, 1181 (8th Cir.1982) ("Electric power can be felt, if not touched."), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 814, 74 L.Ed.2d 1013 (1983); *Town of Concord, Mass. v. Boston Edison Co.*, 676 F.Supp. 396, 398 (D.Mass.1988) ("Like other commodities, electricity is useful to purchasers solely because of its physical properties and not because it represents any underlying contractual right or other intangible."); *Borough of Ellwood City, Pa. v. Pennsylvania Power Co.*, 570 F.Supp. 553, 561 (W.D.Pa.1983).